607 A.2d 756

**MT. LEBANON SCHOOL DISTRICT and Mt. Lebanon High Authority, Appellees,**

v.

**W.R. GRACE AND COMPANY, a Corporation, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 11, 1991.

Filed April 29, 1992.

456

Lawrence E. Flatley, Pittsburgh, for appellant.

John F. Perry, Pittsburgh, for appellees.

Before CAVANAUGH, BECK and KELLY, JJ.

KELLY, Judge:

In this opinion we are called upon to determine, *inter alia*, whether a school district may assert the doctrine of *nullum tempus occurrit reqi* to defeat the applicable statute of limitations in an action against a third party based

upon that party's sale to the school district of a product containing asbestos for use in the construction of additions to a school building within the district. Following a three week trial, a jury returned a verdict in favor of appellant, W.R. Grace and Company (hereinafter "Grace") and against the appellee, Mt. Lebanon School District (hereinafter "School District"). Subsequent to the filing of post-verdict motions, the trial court awarded the School District a new trial. The court found that it had erred in charging the jury on the applicable statute of limitations, concluding that "the doctrine of *nullum tempus* was applicable." Trial Court Opinion at 3. We agree with the trial court that the doctrine of *nullum tempus* was applicable in the instant case and that the granting of a new trial was proper. Hence, we affirm.

The relevant facts and procedural history are as follows. In 1970, the School District formed the Mt. Lebanon High School Authority to finance the construction of several additions to Mt. Lebanon High School. During construction, Grace supplied the Authority with fireproofing material it had manufactured known as Monokote. The Monokote was used as fireproofing mainly in the floors, ceilings and beams in the additions. Subsequent to the completion of the additions and as a result of several reports suggesting guidelines for the testing for asbestos in schools, the district commenced inspection of the high school. The inspection uncovered asbestos in the Monokote used as fireproofing in the additions. Consequently, on August 19, 1983, the School District filed this lawsuit seeking recovery for the costs of removing Grace's product from the high school additions.

On September 21, 1989, the trial court granted the School District's motion *in limine* to exclude evidence on the statute of limitations. The order granted the motion, "... without prejudice to defendants' [Grace's] right to offer the same evidence as to other issues." *Order*, 9/12/89. Throughout the entire litigation it was the School District's position that the doctrine of *nullum tempus* applied, negat-

ing the statute of limitations. The trial court was well aware of this when it granted the District's motion *in limine* and denied Grace's motions for a directed verdict. *See* N.T. 9/29/89 at 161. At the conclusion of testimony, however, Grace requested a charge on the applicable statute of limitations. At the charge conference, the court granted Grace's charge on the statute of limitations and the School District noted an exception, again informing the court of its position as to the applicability of *nullum tempus*. N.T. 10/11/89 at 226(b). At trial and very near the close of its instructions, the court instructed the jury as follows:

There is sort of a legal matter in here, I'm not quite sure it belongs to the jury, but they have asked for it and I'm going to give it to you.

W.R. Grace contends the plaintiff's claims are barred by a defense called the statute of limitations. The statute of limitations is the time period within which a plaintiff is required by law to commence a lawsuit. If plaintiff does not bring his lawsuit within that required time, he forfeits his right to sue.

In this case the statute of limitations period is two years. The two-year period begins to run when the plaintiff first knew, or by the exercise of reasonable care or diligence should have known, that its claim that asbestos-containing products in its building were potentially hazardous. With regard to plaintiff's knowledge, you are instructed that plaintiff had knowledge if it actually knew that asbestos-containing fireproofing could be potentially hazardous or that plaintiff had information which would normally have led a reasonably careful person of the same intelligence, training and experience to make inquiry through which the plaintiff would have learned and discovered that asbestos-containing fireproofing could be potentially hazardous.

W.R. Grace has the burden to prove the plaintiff's knowledge by a preponderance of the evidence. If W.R. Grace proves by that preponderance of the evidence that plain-

tiff knew, or by the exercise of reasonable care or inquiry should have known on or before August 19, 1981 that the asbestos-containing fireproofing applied to the additions of plaintiff's high school had contaminated the building, then this lawsuit was untimely filed and your verdict must be for the defendant.

N.T. 10/12/89 at 345–347. The jury deliberated nearly four hours before returning a verdict for Grace.

The School District filed timely post-verdict motions alleging several trial errors. Most significantly, the School District contended that the court had erred in charging the jury on the applicable statute of limitations. The School District argued that the court had effectively reversed its order granting the District's motion *in limine* precluding evidence regarding the statute of limitations. Moreover, the School District alleged, as it had at the charge conference, that the doctrine of *nullum tempus* applied, thus defeating the statute of limitations defense. Having more fully researched the issue, the trial court concluded that the School District was correct and that it had erred when it charged the jury on the applicable statute of limitations. The court further found that a new trial was warranted because it was unclear on what grounds the jury had based their verdict. Trial Court Opinion at 5–6.[1] Following the court's order awarding the School District a new trial, Grace perfected this timely appeal.

On appeal, Grace contends that: 1) the trial court erred in granting the School District a new trial under the doctrine of *nullum tempus;* 2) the School District may not now claim prejudice when it failed to do so below; 3) the court's charge on the statute of limitations, if error, was harmless error, and; 4) the trial court erred in failing to direct a verdict for Grace when the School District is seeking purely economic recovery which is not recoverable in tort. We address these issues *seriatim.*

1. The trial court rejected the School District's remaining allegations of error. They are not before us on appeal.

■ We begin by noting that our standard of review from a trial court's decision to grant a new trial is, "whether the trial court palpably and clearly abused its discretion or committed an error of law which controlled the outcome of the case." *Westinghouse Elevator Co. v. Herron,* 514 Pa. 252, 256, 523 A.2d 723, 725 (1987). Where as here, however, the court gives a single reason for the granting of a new trial, the court's discretion is not at issue, but rather the validity of its legal justification is subject to review. *Id.* With the foregoing in mind, we turn to Grace's challenges on appeal.

The doctrine of *nullum tempus occurrit reqi* ("time does not run against the king") has long been accepted in this Commonwealth. *Commonwealth Department of Transportation v. J.W. Bishop & Co.,* 497 Pa. 58, 62, 439 A.2d 101, 103 (1981); *School District of the Borough of Aliquippa v. Maryland Casualty Company,* 402 Pa.Super. 569, 580–82, 587 A.2d 765, 771 (1991). As this Court recently noted,

> [w]henever the Commonwealth invokes the doctrine of *nullum tempus,* it is seeking as a plaintiff to vindicate public rights and protect public property. Thus, since its adoption in this country, the rationale for the doctrine of *nullum tempus* has been "the great public policy of preserving public rights, revenues and property from injury and loss." *United States v. Hoar,* 26 Fed.Cas. 329, 330 (C.C.D.Mass.1821) (No. 15,373) (Story, J.). *See [Commonwealth v.] Musser Forests* [394 Pa. 205, 146 A.2d 714 (1958)], *supra* (*nullum tempus* "matter of important public policy"). Moreover, the benefits and advantages of the doctrine of *nullum tempus* extend "to every citizen, including the defendant whose plea of … limitations it precludes." *Guaranty Trust [Co. of New York v. United States], supra,* 304 U.S. [126] at 132, 58 S.Ct. [785] at 789 [82 L.Ed. 1224 (1938)].

*School District of Aliquippa, supra,* 402 Pa.Super. at 581, 587 A.2d at 771, *quoting Bishop, supra,* 497 Pa. at 62, 439 A.2d at 104. In *City of Philadelphia v. Holmes Protective*

*Co.,* 335 Pa. 273, 6 A.2d 884 (1939), our Supreme Court held that,

> [i]t is true that, unless otherwise provided, statutes of limitations cannot be pleaded against such political subdivisions when they are seeking to enforce strictly public rights, that is, when the cause of action accrues to them in their governmental capacity and the suit is brought to enforce an obligation imposed by law as distinguished from one arising out of an agreement voluntarily entered into by the defendant.

*Id.,* 335 Pa. at 278, 6 A.2d at 887; *see also Pocono Township v. Hall,* 127 Pa.Cmwlth. 116, 121, 561 A.2d 53, 55 (1989) (same); *Borough of West Fairview v. Hess,* 130 Pa.Cmwlth. 385, 391–393, 568 A.2d 709, 713 (1989) ("unless a municipality is exercising a governmental function or there is an express provision to the contrary, a statute of limitation will apply to the government unit."); *but see Northampton County Area Community College v. Dow Chemical, U.S.A.,* 389 Pa.Super. 11, 19, 566 A.2d 591, 595 (1989) (statute and case law have rejected a "governmental v. proprietary function" test), *affirmed Northampton County Area Community College v. Dow Chemical U.S.A.,* 528 Pa. 502, 598 A.2d 1288 (1991) (*per curiam*) (Papadakos, J., dissented and filed an opinion which Larsen, J. joined).

█ Within this framework Grace contends that the School District entered into a private contract and, like a private litigant, is seeking judgment based on its purchase of an allegedly defective product. *See City of Philadelphia v. Holmes, supra.* Grace points to a recent Federal District Court case for support. In *In re Asbestos School Litigation,* 768 F.Supp. 146 (E.D.Pa.1991), several school districts filed suit against manufacturers of asbestos laden products present in schools throughout their respective districts. The defendants raised the statute of limitations as a bar to the lawsuits. The school districts countered that the doctrine of *nullum tempus* applied and defeated the statute of limitations defense.

In concluding that *nullum tempus* could not be invoked to defeat the applicable statute of limitations, the Court opined:

Under *nullum tempus,* the statute of limitations cannot be pleaded against the Commonwealth of Pennsylvania, or political subdivisions thereof, ... when they are seeking to enforce strictly public rights, that is, when the cause of action accrues to them in their governmental capacity and the suit is brought to enforce an obligation imposed by law as distinguished from one arising out of an agreement voluntarily entered into by the defendant. *City of Philadelphia v. Holmes Electric Protective Co. of Philadelphia,* 335 Pa. 273, 6 A.2d 884 (Pa.1939).

In support of their argument that *nullum tempus* applies here to avoid a statute of limitations bar to the Fourth Amended Complaint, Plaintiffs cite several cases which favor application of *nullum tempus* to a Pennsylvania school district plaintiff. Respectfully, I am not inclined to agree that *nullum tempus* should be applied to Plaintiffs' Fourth Amended Complaint. In spite of the fact that in constructing school buildings, Commonwealth school districts can be said to act as "an arm or agency of the state with attributes of sovereignty inherent in the state," [*School District of Philadelphia v. Planet Insurance Co.,* 44 Pa.D. & C.3d 262 (1987)] the fact that a public function rather than a proprietary one is being carried out is not enough, in itself, to mandate immunity from the statute of limitations under *nullum tempus.* A "governmental vs. proprietary function" test has been rejected as a means of determining governmental immunity generally, and as a test for the application of *nullum tempus* specifically. *See [Northampton County Area Community College v. Dow Chemical, U.S.A.,* 389 Pa.Super. 11, 566 A.2d 591 (1989)].

According to the Supreme Court of Pennsylvania, in order for the application of *nullum tempus* to be appropriate, the right sought to be enforced must be "strictly public," as well as "imposed by law on the defendant." *Holmes,*

*supra*, 335 Pa. at 278 [6 A.2d 884]. Here, Plaintiffs seek to recover damages for injury to school district property resulting from numerous asbestos manufacturers having allegedly placed dangerous, friable asbestos-containing materials in Plaintiffs' school building, as well as having concealed knowledge of the danger. Although the Plaintiffs may be acting in a governmental role, as the authority cited by Plaintiffs has legitimately found, they are not acting in a role that is "exclusively governmental ... but rather [are] seeking a judgment against alleged [tortious actors], just as any private litigant having standing could do." *Borough of West Fairview v. Hess*, 568 A.2d 709, 713 (Pa.Commw.1989). The language of the Pennsylvania Supreme Court in Holmes requires the latter for *nullum tempus* to be invoked. Therefore *nullum tempus* does not defeat Pennsylvania's two-year statute of limitations, which expired against Plaintiffs no later than January 17, 1985. Summary Judgment in favor of Kaiser Gypsum and against Plaintiffs in the Lancaster Action will be entered accordingly.

768 F.Supp. at 152. Grace further maintains this Court recently held that school districts cannot invoke the doctrine of *nullum tempus*, citing *School Dist. of Aliquippa v. Maryland Casualty Co., supra.*[2]

The School District contends that the trial court properly applied the doctrine of *nullum tempus* in awarding a new trial. For support, the District points to *School District of Philadelphia v. Planet Insurance Co.*, 44 Pa.D. & C.3d 262 (1987). In *Planet, supra,* the School District of Philadelphia sought to recover damages suffered as the result of defective electrical construction at several of its schools.

---

**2.** In note 5 of *Aliquippa*, this Court suggested that it "would not appear that the Aliquippa School District could itself invoke *nullum tempus....*" *Aliquippa, supra* 402 Pa.Super. at 583, n. 5, 587 A.2d at 772, n. 5. The rationale was twofold. First, the district had already been made whole by the insurance company's payment of the judgment. Finally, the action was based on the alleged negligence of auditors hired by the district and was between two private litigants, the insurance company and the auditors. Nothing in *Aliquippa, supra,* precludes the decision we reach in the instant case.

Planet Insurance brought a motion to dismiss claiming that the school district's claims were barred by the applicable statute of limitations. The school district argued that under the doctrine of *nullum tempus* it was immune from the statute of limitations.

In finding in favor of the school district, the *Planet* court opined:

The school district was created for the purpose of educating the public. Article 3 § 14 of the Pennsylvania Constitution commands the creation of a body or agency to "provide for the maintenance and support of a ... system of education to serve the needs of the Commonwealth." Section 7–701 of the Public School Code of 1949 states in part:

"The board of school directors ... shall provide the necessary grounds and suitable school buildings to accommodate all the children between the ages of 6 and 21.... Such building shall be constructed, furnished, equipped and maintained in a proper manner herein provided. Suitable provisions shall be made for the heating, ventilating, adequate lighting,....

"§ 7–733 Standards of State Board of Education states in part that (1) all public school buildings hereafter built or rebuilt shall conform to standards established by the state Board of Education as to heating and ventilating ... light area....

"§ 7–751 (a) relating to contracts, command that the school board enter separate contracts with the lowest responsible bidder after due public notice asking for competitive bids."

These statutes made it clear that in building schools, the school district must follow commands set forth by the Pennsylvania Constitution and the Legislature of the Commonwealth. Accordingly, in this context, the school district is an arm or agency of the state with attributes of sovereignty inherent in the state. Plaintiff did not enter the contract voluntarily, but instead entered mandatorily at the instruction of the state Constitution and the 1949

Public School Code. The state has a strong interest in educating our children and must provide buildings in which to house them during the process. In order to carry out this duty, someone must build and construct the schools to house the children.

To prevent the school district from asserting the protections granted to the Commonwealth would frustrate the intent and purpose of the Pennsylvania Constitution, Article 3 § 14, and the Public School Code of 1949.

\* \* \* \* \* \*

Thus, it appears that the school district has no choice and is acting by constitutional mandate when it enters a construction contract.

*Id.* at 270–73. While recognizing the "private" nature of the contract, the court emphasized that the district was compelled by law to enter into the contract. We find the reasoning employed by the court in *Planet, supra,* particularly persuasive.

The Constitution of this Commonwealth provides:

The general assembly shall provide for the maintenance and support of a thorough and efficient system of public education to serve the needs of the Commonwealth.

Pa.Const. Art. 3, § 14. School districts have been created as agencies of the legislature to administer this constitutional duty. *School District of Philadelphia v. Twer,* 498 Pa. 429, 435, 447 A.2d 222, 224 (1982); *Smith v. School District of Township of Darby,* 388 Pa. 301, 130 A.2d 661 (1957).[3] Moreover, the legislature has declared that it is the duty of the board of directors of each school district to

---

3. In *Northampton County College v. Dow Chemical, Co., supra,* this Court held that because the legislature did not *create* the community colleges, but merely *authorized* their creation, the college could not properly invoke *nullum tempus* as it was not a Commonwealth party. *Id.* 389 Pa.Super. at 19–21, 566 A.2d at 595. The School District, however, has been *created* to fulfill the legislature's constitutional mandate, *i.e.* to provide an efficient system of public schools. *See School District of Philadelphia v. Twer, supra* and *Smith v. School District of Township of Darby, supra.* Given this distinction in classification, the holding in *Northampton County College v. Dow Chemical, Co., supra,* is inapplicable to the instant case.

... provide the necessary grounds and suitable school buildings to accommodate all the children between the ages of 6 and 21 years, in said district, who attend school. Such buildings shall be constructed, furnished, equipped and maintained in a proper manner as herein provided. Suitable provisions shall be made for the heating (including the purchase of fuel), ventilating, adequate lighting, and sanitary conditions thereof, and for a safe supply of water, so that every pupil in any such building may have proper and healthful accommodations.

24 Pa.S.A. § 7–701. The Pennsylvania Code provides that, "[t]he school buildings, grounds, play area equipment and appurtenances shall be constructed and maintained to minimize health and accident hazards." 25 Pa.Admin.Code § 171.13.

■ The School District is, as an agency of the legislature, unquestionably compelled by law, constitutionally and statutorily, to provide safe and suitable facilities to accommodate the schoolchildren of the Commonwealth. The practical implications of such a duty require School Districts, in their governmental capacity, to enter into contractual relations with private parties who can construct and maintain such suitable facilities. Where, as here, a cause of action accrues to a party in its governmental capacity and the suit is brought to enforce strictly public rights and an obligation imposed by both the constitution and statute, such as that herein, the doctrine of *nullum tempus* applies. *City of Philadelphia v. Holmes, supra.*[4] Accordingly, we hold that

**4.** Contrary to Grace's assertions, *City of Philadelphia v. Holmes, supra,* does not compel an opposite result. There a city ordinance granted Holmes, Co., permission to carry its wires "under and beneath the highways of the City of Philadelphia," *Holmes, supra,* 335 Pa. at 275, 6 A.2d at 886, provided the company paid the city a certain percentage of gross receipts for the year. The city was not required, either under the Constitution, statute or case law, to provide companies the option of carrying their wires under the streets of the city. The ordinance granted *the companies permission to do so.* The court emphasized that the city was suing to enforce a contract "assumed by defendant when it accepted the privilege granted by the ordinance...." *Id.,* 335 Pa. at 280, 6 A.2d at 888. As discussed *infra,* the school district herein is compelled by law to provide for the safe and healthy construction

*nullum tempus* applied to the School District's action against Grace brought to enforce and vindicate obligations imposed upon the District by law.[5]

■ Grace's next two contentions are somewhat intertwined and will therefore be addressed together. Grace contends that the School District did not allege any prejudice resulting from the instruction by the trial court and was or is therefore precluded from claiming prejudice in post-verdict motions or on appeal. Grace also argues that any error in the instruction was harmless.

We begin by noting that the School District specifically argued the applicability of *nullum tempus* throughout the litigation. N.T. 9/29/89 at 161; 10/11/89 at 226(b). The School District objected to the charge at the conference and again following the charge itself. N.T. 10/12/89 at 354. Both Grace and the trial court were on notice as to why the School District felt the statute of limitations charge was error and how such a charge might prejudice the District. Thus, the School District had properly preserved any challenge to the erroneous jury instruction and had pointed out the possible prejudice to the trial court prior to the filing of post-verdict motions. *See e.g. Summit Fasteners, Inc. v. Harleysville Nat. Bank & Trust Co., Inc.*, 410 Pa.Super. 56, 62 n. 4, 599 A.2d 203, 206 n. 4 (1991).

and maintenance of school buildings to accommodate the schoolchildren of this Commonwealth.

5. We note that although authority from other jurisdictions is divided, we find persuasive those cases which have granted immunity from statutes of limitation. *See e.g. Laramie County School District Number One v. Muir*, 808 P.2d 797 (Wyo.1991); *Board of Education of City of Chicago v. A, C, and S, Inc.*, 131 Ill.2d 428, 137 Ill.Dec. 635, 546 N.E.2d 580 (1989); *Commonwealth v. Owens–Corning Fiberglas Corp.*, 238 Va. 595, 385 S.E.2d 865 (1989); *Oklahoma City Municipal Improvement Authority v. HTB, Inc.*, 769 P.2d 131 (Okl.1988); *Rowan County Board of Education v. U.S. Gypsum*, 87 N.C.App. 106, 359 S.E.2d 814, *reh. denied*, 321 N.C. 298, 362 S.E.2d 782 (1987); *Bellevue School District No. 405 v. Brazier Construction Co.*, 103 Wash.2d 111, 691 P.2d 178 (1984); *but see New Jersey Educational Facilities v. Gruzen*, 125 N.J. 66, 592 A.2d 559 (1991); *Board of Education v. Dow Chemical Co.*, 40 Conn.Supp. 141, 482 A.2d 1226 (1984).

■ As to Grace's harmless error argument, an erroneous jury instruction will provide the basis for a new trial if the instruction is fundamentally in error and it may have been responsible for the verdict. *Summit Fasteners, Inc. v. Harleysville Nat. Bank & Trust Co., Inc., supra,* 410 Pa.Super. at 62, 599 A.2d at 206; *Smith v. Brooks,* 394 Pa.Super. 327, 340, 575 A.2d 926, 932 (1990); *Jistarri v. Nappi,* 378 Pa.Super. 583, 588, 549 A.2d 210, 213 (1988). Instantly, it is clear from our discussion *infra,* that the instruction itself was error. The trial court concluded that because the instruction may have contributed to the verdict, a new trial was warranted. Trial Court Opinion at 5–6. Our review of the record fails to compel a different conclusion.

■ Grace's final contention is that the trial court erred in failing to direct a verdict in its favor. Citing this Court's decision in *REM Coal Co. v. Clark Equipment Co.,* 386 Pa.Super. 401, 563 A.2d 128 (1989) (*en banc*), Grace argues that because a party cannot recover in a negligence or strict liability action for a purely economic loss, the School District is precluded from recovery herein for the costs of removing the asbestos contaminated fireproofing from the additions to the high school.

In *REM Coal Co., Inc. v. Clark Equipment Co., supra,* this Court addressed

[T]he appropriateness of permitting recovery in tort where a product malfunctions because of an alleged defect in the product, causing damage to the product itself and consequential damages in the nature of costs of repair or replacement or lost profits, but the malfunction causes no personal injury and no injury to any other property of the plaintiff.

*Id.,* 386 Pa.Superior Ct. at 403, 563 A.2d at 129. In concluding that recovery was no longer appropriate in these cases, this Court adopted the view set forth by the United States Supreme Court in *East River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986) (recovery in tort is barred where the only damage is

to the product itself). Grace maintains that *REM Coal, supra,* bars the School District's recovery in the instant case.

The School District maintains that *REM Coal, supra,* is inapposite instantly, as courts throughout the country have determined that asbestos contamination constitutes "property damage" and not merely damage to the product itself. Because the School District does not seek recovery for damages to Grace's product arising from its defective nature but for damage to the buildings, their contents and their occupants, the School District concludes that it is not prevented from recovering in tort for the costs of removing Grace's product. We agree that our decision in *REM Coal, supra,* does not preclude recovery in the instant case.

A number of recent cases in other jurisdictions have rejected the argument that a public entity owning a public building cannot sue in tort for the costs of removing building materials contaminated with asbestos. *See City of Greenville v. W.R. Grace & Co.,* 827 F.2d 975 (4th Cir.1987); *Northstar Assoc. v. W.R. Grace & Co.,* 767 F.Supp. 969 (D.Minn.1991); *Independent School District v. W.R. Grace & Co.,* 752 F.Supp. 286 (D.Minn.1990); *Drayton v. Public School Dist. No. 19 v. W.R. Grace & Co.,* 728 F.Supp. 1410 (D.N.D.1989); *City of Manchester v. National Gypsum Co.,* 637 F.Supp. 646 (D.R.I.1986); *Town of Hooksett School Dist. v. W.R. Grace & Co.,* 617 F.Supp. 126 (D.N.H.1984); *Livingston Board of Education v. U.S. Gypsum,* 249 N.J.Super. 498, 592 A.2d 653 (Appellate Division, 1991); *Board of Education of City of Chicago v. A.C. & S., Inc.,* 131 Ill.2d 428, 137 Ill.Dec. 635, 546 N.E.2d 580 (1989). The courts have cited a number of factors supporting their rulings. We find two of these factors most persuasive: (1) that the school district is a public entity and not a business seeking reimbursement for lost profits; and (2) that the defect is not in the product's failure to perform the function for which it was purchased, but rather in its ability to expose the occupants of the building to serious health hazards.

■ The School District is not alleging that Grace's product is unacceptable as fireproofing or that the presence of asbestos in any way limited the product's ability to repel fire. Rather, the School District maintains that the presence of asbestos fibers in Grace's product damages not the product itself, but the building and those who are exposed to the fibers. In *REM Coal, supra,* this Court simply stated that "negligence and strict liability theories do not apply in an action between commercial enterprises involving a product that malfunctions where the only resulting damage is to the product itself." *Id.* 386 Pa.Super. at 412–13, 563 A.2d at 134. Thus, recovery is appropriate where, as here, the party seeking recovery is a public entity and not a private litigant seeking reimbursement for lost profits, and the product's defect is its capacity to expose individuals to a potentially life threatening safety risk, and not in its failure to perform the function for which it was purchased.

Accordingly, and for the foregoing reasons, the order awarding the School District a new trial is affirmed.

Order AFFIRMED.