## Snook v. Tri-County Confinement Systems Inc.

*James I. Tarman,* for plaintiff.

*Charles E. Wasilefski,* for defendant Tri-County Confinement Systems.

*Timothy J. McMahon,* for defendant Charles C. Loose & Sons.

*C. Roy Weidner Jr.* for defendant Christian G. Riehl.

*P. Jeffrey Hill,* for defendant Amos S. Riehl.

WOELFEL, *J.,* September 27, 1995—Plaintiff has commenced this action seeking damages from various defendants resulting from a barn collapse on March 2, 1994. Plaintiff alleges that defendant Charles C. Loose & Sons Inc. was engaged in the business of designing, manufacturing, and selling building materials, including roof trusses. (Complaint, paragraph 4.) Plaintiff alleges that during a period of snowfall, a portion of the roof of his barn collapsed, resulting in substantial damages to his business, personal property, and other economic injury. (Complaint, paragraphs 17 and 18.) Plaintiff avers causes of action based upon strict liability (Count VI), negligence (Count VII) and breach of warranty (Count VIII) alleging, inter alia, defective roof trusses and braces. Defendant Loose has filed the instant pre-

liminary objections in the nature of a demurrer, contending that as a matter of law plaintiff cannot maintain a cause of action based on negligence or strict liability theories pursuant to the "economic loss" rule. For the reasons set forth herein, Loose's preliminary objections will be overruled.

The standard of review for preliminary objections is well settled; the court must accept as true all material facts stated in the complaint, as well as all reasonable inferences drawn therefrom. The question presented by a demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where doubt exists whether a demurrer should be sustained, the demurrer should be overruled. *Powell v. Drumheller,* 539 Pa. 484, 489, 653 A.2d 619, 621 (1995).

Loose contends that the "economic loss" rule precludes any recovery pursuant to theories of negligence and/or strict liability. In *REM Coal Co. Inc. v. Clark Equipment Co.,* 386 Pa. Super. 401, 563 A.2d 128 (1989), the Superior Court addressed

"[T]he appropriateness of permitting recovery in tort where a product malfunctions because of an alleged defect in the product, causing damage to the product itself and consequential damages in the nature of costs of repair or replacement or lost profits, but the malfunction causes no personal injury and no injury to any other property of the plaintiff." *Id.* at 403, 563 A.2d at 129.

In *REM Coal Co., supra* the Superior Court held that "negligence and strict liability theories do not apply in an action between commercial enterprises involving a product that malfunctions where the only resulting damage is to the product itself." *Id.* at 412-13, 563 A.2d at 134. Based upon its adoption of the economic loss rule, the Superior Court concluded that REM Coal

had not stated causes of action in negligence or strict liability insofar as it had not alleged damages exclusive of the loss of the product itself but merely sought to recover the benefit of its bargain. *Id.* at 413, 563 A.2d at 134.

Subsequent decisions have applied the economic loss rule adopted in *REM Coal Co.* to either permit or preclude recovery. In *Spivack v. Berks Ridge Corp. Inc.,* 402 Pa. Super. 73, 586 A.2d 402 (1990), the plaintiffs filed a complaint alleging that their newly constructed condominium was defective. The alleged defects included inadequate insulation, inadequately designed heating and air conditioning, and an undersized furnace. Defendant demurred to the complaint, which included causes of action based upon negligence and breach of warranty. The Superior Court affirmed the sustaining of the demurrer on the negligence count based upon the economic loss rule.[1] The opinion briefly states:

"The general rule of law is that economic losses may not be recovered in tort (negligence) absent physical injury or property damage. . . . The record herein offers no indication of either personal injury to the [plaintiffs] or property damage to their condominium resulting from the builder/contractor's actions or lack thereof." *Id.* at 78, 586 A.2d at 405. (citations omitted)

In *Mt. Lebanon School District v. W.R. Grace & Co.,* 414 Pa. Super. 455, 607 A.2d 756 (1992), a fireproofing material supplier contended that based upon the economic loss rule it was entitled to a directed verdict against a school district which had sued the supplier for removal of asbestos-laden materials from its newly renovated high school building. Specifically,

---

1. The lower court had dismissed the negligence count on its finding that the builder/contractor did not owe a duty to the plaintiffs. The Superior Court affirmed the dismissal of the negligence action but on different grounds.

the supplier contended that "because a party cannot recover in a negligence or strict liability action for a purely economic loss, the school district is precluded from recovery herein for the costs of removing the asbestos contaminated fireproofing from the additions to the high school." *Id.* at 468, 607 A.2d at 763. The school district argued that *REM Coal Co.* did not apply insofar as asbestos contamination had previously been determined to constitute property damage as opposed to damage to the product itself. The district also argued that because it had not sought recovery for damage to the product arising from its defective nature but had sought recovery for "damage to the buildings, their contents and their occupants," the district was not precluded for recovering in tort for the costs of removing the fireproofing materials. The Superior Court agreed with the school district's position and concluded that its decision in *REM Coal Co.* did not preclude recovery by the district for the removal of the materials.

In *Jones v. General Motors Corp.,* 428 Pa. Super. 544, 631 A.2d 665 (1993), the economic loss rule precluded plaintiffs from recovery under a strict liability theory where their truck, manufactured by General Motors, was destroyed by fire as a result of a malfunction within the vehicle. The Superior Court stated that insofar as "appellants have made no allegations of damage outside of the loss of the truck, they have failed to state a cause of action in strict liability." *Id.* at 547, 631 A.2d at 666.

Returning to the instant complaint, it appears that the damage allegations remove this matter from the purview of the "economic loss" rule. Paragraph 17 of the complaint avers in pertinent part "a portion of the aforementioned barn collapsed, resulting in substantial damage to and destruction of plaintiff's business and personal property." (emphasis supplied) Paragraph 18 avers: "As a result of the aforesaid collapse, plaintiff

sustained damages to his business and personal property as well as other economic damages, which damages are in excess of $150,000." In light of the fact that plaintiff is entitled to all reasonable inferences, one may conclude that he seeks damages outside the loss of the roof trusses themselves. While the better pleading practice would have required alleging specific damages—such as loss of farm animals, loss of equipment, etc., Loose's preliminary objections do not request a more specific pleading. Insofar as plaintiff has alleged loss to his business and personal property, the economic loss rule does not compel the grant of a demurrer to Counts VI and VII of the complaint.

It is noted that plaintiff also contends that Loose's preliminary objections should not be considered by the court because they are untimely. In his brief, plaintiff explains that while defense counsel was given an extension in time to file an *answer* to the complaint, plaintiff's counsel never agreed to an extension to file preliminary objections. Plaintiff has attached to his brief the various correspondence between counsel and the initial insurance adjuster, in which the extension question was first broached, as well as correspondence between present counsel. Plaintiff's counsel's letter of July 14, 1995 explicitly states that he was granting a reasonable extension of time to answer the complaint and not to otherwise plead.

In determining whether a writing constitutes a written agreement for extension of time, the court must apply basic principles of contract law as they relate to the formation of agreements—the parties must be known; the terms (the time period involved) must be definite; and the plain meaning of the writing must indicate a meeting of the minds. *Johnson v. SEPTA,* 524 Pa. 209, 570 A.2d 71 (1990).

It would appear from the correspondence exchanged between counsel that an agreement of an extension to

file preliminary objections was not reached by counsel. Therefore, plaintiff's counsel's argument that the demurrer should not be considered because of its untimeliness is valid. However, plaintiff did not properly raise the issue. Rather than raise this issue in his brief, it was incumbent upon plaintiff to challenge the timeliness of defendant's preliminary objections by his own preliminary objections, such as a motion to strike as untimely. "The proper way to challenge the propriety of the defendant's preliminary objections is by a preliminary objection thereto, rather than by either a brief, or a memorandum of law." Standard Pennsylvania Practice 2d, volume 5, *Preliminary Objections,* §25:15.

An order consistent with this opinion will be entered.

## ORDER

And now, September 27, 1995, the preliminary objections of defendant Charles C. Loose & Sons Inc. in the nature of a demurrer are hereby denied.

Defendant Loose shall file his answer to the plaintiff's complaint within 20 days of the date of entry of this order.