## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Clearfield County, Pennsylvania, : 
               Appellant : 
                : 
          v. : 
                : 
Transystems Corporation, : 
successor to L. Robert Kimball and : 
Associates, Inc., Leonard S. Fiore, Inc., :   No. 193 C.D. 2024
and Showalter Masonry, Inc. :   Argued: October 8, 2024

BEFORE:   HONORABLE ANNE E. COVEY, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE STACY WALLACE, Judge

OPINION BY
JUDGE COVEY                              FILED: November 1, 2024

Clearfield County, Pennsylvania (County), appeals from the Clearfield County Common Pleas Court's (trial court) February 15, 2024 order sustaining the preliminary objections of Transystems Corporation (Transystems), successor to L. Robert Kimball and Associates, Inc. (Kimball), Leonard S. Fiore, Inc. (Fiore), and Showalter Masonry, Inc. (Showalter) (collectively, Defendants) dismissing the County's civil complaint (Complaint) for lack of jurisdiction, and holding that the County's construction of the County's jail (Jail) in the early 1980s was the performance of a governmental function and in exercise of the County's governmental capacity. The County presents three issues for this Court's review: (1) whether the trial court erred by conducting an evidentiary hearing to resolve factual disputes raised by Defendants' jurisdictional objections and relying on facts not in the Complaint to sustain Defendants' preliminary objections; (2) whether the trial court erred by ruling that for purposes of Section 5536 of the Judicial Code, 42

Pa.C.S. § 5536 (Section 5536, Statute of Repose), the Jail construction was completed in 1981; and (3) whether the trial court erred by finding that the County could not overcome the Statute of Repose by invoking the doctrine of *nullum tempus occurrit regi*[1] (*nullum tempus*). After review, this Court affirms.

The County contracted for the Jail's construction in approximately 1977. The County retained Kimball to provide architectural and engineering services, Fiore to act as general contractor, and Showalter to provide masonry contracting services for the project. In July 2021, the County executed a contract with ABM Building Solutions (ABM) to oversee the $9 million Jail renovation project. During the preparatory work for the renovation project, ABM discovered that the Jail's roof was not connected to its masonry walls. Instead, the roof was floating on top of the one-story building because it had not been fastened to its walls during the original construction. To remedy this defect, the County was required to spend nearly $4 million more than the $9 million originally estimated for the Jail's renovation.

On January 6, 2023, the County filed the Complaint against Defendants. Defendants each filed preliminary objections alleging, *inter alia*, that the trial court lacked jurisdiction because the Complaint was not filed within 12 years from the completion of the Jail's original construction, as Section 5536 requires.[2]

---

[1] "[T]he doctrine *nullum tempus occurrit regi*, meaning '[t]ime does not run against the king,' . . . has its roots in the prerogative of the Crown. [*Commonwealth v.*] *J.W. Bishop & Co.*, 439 A.2d [101,] 103 [(Pa. 1981)]." *City of Phila. v. Galdo*, 217 A.3d 811, 820 (Pa. 2019).

[2] Section 5536, pertaining to construction projects, provides:

> **(a) General rule. --** Except as provided in subsection (b), a civil action or proceeding brought against any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property **must be commenced within 12 years after**

The County responded to the preliminary objections by asserting that the doctrine of *nullum tempus*[3] rendered the Statute of Repose ineffective in the instant matter.

On April 12, 2023, the trial court scheduled argument on Defendants' preliminary objections. On April 28, 2023, the trial court issued an order observing that since all Defendants had filed preliminary objections based on the Statute of Repose thereby raising a jurisdictional issue, at the hearing the parties were to "be prepared to offer testimony or other evidence to the [trial c]ourt concerning the date

---

**completion of construction of such improvement** to recover damages for:

> (1) Any deficiency in the design, planning, supervision or observation of construction or construction of the improvement.
>
> . . . .

**(b) Exceptions.--**

> . . . .
>
> (2) The limitation prescribed by subsection (a) shall not be asserted by way of defense by any person in actual possession or control, as owner, tenant or otherwise, of such an improvement at the time any deficiency in such an improvement constitutes the proximate cause of the injury or wrongful death for which it is proposed to commence an action or proceeding.

**(c) No extension of limitations. --** This section shall not extend the period within which any civil action or proceeding may be commenced under any provision of law.

42 Pa.C.S. § 5536 (a)(1), (b)(2), (c) (text emphasis added).

[3] This Court has explained:

> The doctrine of *nullum tempus* permits a government agency "to circumvent the applicable statute of limitations." *Duquesne Light Co*[.] *v. Woodland Hills Sch*[.] *Dist*[.], 700 A.2d 1038, 1051 (Pa. Cmwlth. 1997). To invoke *nullum tempus*, the government must be enforcing a right that is strictly public and one imposed by law. *Id.* Where the government agency "seeks to enforce purely contractual rights where [it] was not required to enter into the contract[,]" *nullum tempus* cannot be invoked. *T*[*wp.*] *of Salem v. Miller Penn Dev*[.], *LLC*, 142 A.3d 912, 918 (Pa. Cmwlth. 2016).

*Allegheny Intermediate Unit v. E. Allegheny Sch. Dist*., 203 A.3d 371, 378 (Pa. Cmwlth. 2019).

3

when [the Statute of Repose] began to run[.]" Reproduced Record (R.R.) at 349a. Thereafter, the parties conducted discovery. *See* R.R. 202a-203a.

On November 14, 2023, the trial court held the hearing regarding the timeliness issue raised in Defendants' preliminary objections. John Sobel, Chairman of the County Board of Commissioners (Commissioner Sobel), testified at the hearing that the Jail's construction was completed in the early 1980s. According to Commissioner Sobel, inmates and staff have occupied the Jail since 1981. *See* R.R. at 205a. Commissioner Sobel also authenticated an occupancy permit for the Jail that the Pennsylvania Department of Labor and Industry (L&I) issued on March 4, 1981 (Occupancy Permit). R.R. at 204a-205a. At Defendants' request, the trial court admitted the Occupancy Permit into evidence. *See* R.R. at 205a.

On February 14, 2024, the trial court sustained Defendants' preliminary objections, concluding that the Jail's construction had been completed in 1981 and, "in the early 1980[]s[,] was the performance of a governmental function and in exercise of [the County's] governmental capacity." R.R. at 347a. The County appealed to this Court.[4]

The County first contends that the trial court erred by conducting an evidentiary hearing and relying on evidence outside the Complaint's four corners to decide the preliminary objections. Specifically, the County argues that the trial court

---

[4]    Our review of a trial court's order sustaining preliminary objections is limited to determining whether the trial court erred as a matter of law or abused its discretion. In order for a trial court to sustain preliminary objections, it must appear with certainty the law will not allow recovery; any doubt must be resolved in favor of the non-moving party. All well-pled facts in the complaint, and reasonable inferences arising from those facts, are accepted as true. However, unwarranted inferences, **conclusions of law**, argumentative allegations or expressions of opinion **need not be accepted**.

*Kull v. Guisse*, 81 A.3d 148, 154 n.3 (Pa. Cmwlth. 2013) (emphasis added; citations omitted).

"went beyond the facts alleged in the [C]omplaint and ruled based upon . . . a speaking demurrer." County Br. at 13. Further, "[t]he trial court . . . went beyond the well-pleaded material facts set forth in [the C]omplaint . . . relying upon the issuance of an occupancy permit that is not referenced in the Complaint and that was introduced into evidence by Defendants at a hearing regarding the preliminary objections." *Id.*

Pennsylvania Rule of Civil Procedure (Civil Rule) 1028 provides, in relevant part:

> (a) Preliminary objections may be filed by any party to any pleading and are limited to the following grounds:
>
>> (1) **lack of jurisdiction over the subject matter** of the action or the person of the defendant, improper venue or improper form or service of a writ of summons or a complaint;
>>
>> . . . .
>>
>> (4) legal insufficiency of a pleading (demurrer);
>
> *Note:* The defense of the bar of a statute of frauds or statute of limitations can be asserted only in a responsive pleading as new matter under [Civil] Rule 1030.
>
> . . . .
>
> (c)(1) A party may file an amended pleading as of course within [20] days after service of a copy of preliminary objections. If a party has filed an amended pleading as of course, the preliminary objections to the original pleading shall be deemed moot.
>
> (2) **The court shall determine promptly all preliminary objections**. **If an issue of fact is raised**, **the court shall consider evidence by depositions or otherwise**.
>
> *Note:* **Preliminary objections raising an issue under subdivision (a)(1), (5), (6), (7) or (8) cannot be determined from facts of record. In such a case, the preliminary objections must be endorsed with a notice**

5

> **to plead or no response will be required under** [**Civil**]
> **Rule 1029(d)** [(**relating to effect of denials**)].
>
> However, preliminary objections raising an issue under
> subdivision (a)(2), (3) or (4) may be determined from facts
> of record so that further evidence is not required.

Pa.R.Civ.P. 1028 (a)(1)(4), (c)(1)(2), Notes (emphasis added).

Notably, the preliminary objections pertaining to Section 5536 are not demurrers as referenced in Civil Rule 1028(a)(4), but rather are preliminary objections referred to in Civil Rule 1028(a)(1) pertaining to "lack of jurisdiction over the subject matter of the action or the person of the defendant[.]" Pa.R.Civ.P. 1028(a)(1). As such, pursuant to Civil Rule 1028(c) and the Note thereto, the trial court was permitted to consider additional evidence in ruling on that preliminary objection. For these reasons, the trial court did not err by conducting an evidentiary hearing to resolve factual disputes raised by Defendants' jurisdictional objections and relying on evidence presented at the hearing to sustain Defendants' preliminary objections.

The County next argues that the trial court erred by ruling that, for purposes of Section 5536, the Jail's construction was completed in 1981. The County contends that, rather than accepting the facts as pled in the Complaint that the Jail was never completed, the trial court improperly considered and accepted extraneous evidence, including the Occupancy Permit,[5] that contradicted those alleged facts.

Contrary to the County's assertion, the Jail's completion date is not simply a factual question for which the allegations in the Complaint must be

---

[5] This Court observes that the Occupancy Permit was included in the documents the County produced in response to discovery requests. The Occupancy Permit, along with the other documents the County produced in response thereto, was admitted into evidence without objection. *See* R.R. at 203a-205a.

6

accepted.[6]  Rather, Pennsylvania Courts have defined "completion" as used in Section 5536(a).  42 Pa.C.S. § 5536(a).  Specifically, the Pennsylvania Supreme Court has held that "[t]he [12-]year period begins to run when the entire construction project is **so completed that it can be used** by the general public." *Noll by Noll v. Harrisburg Area YMCA*, 643 A.2d 81, 84 (Pa. 1994) (emphasis added).  The Pennsylvania Superior Court has ruled that "[t]he 'completion of the construction of such improvement' marks the 'commencement of the repose period at the point **when third parties are first exposed to defects in design**, **planning**, **or construction**.' *Catanzaro v. Wasco Prod*[*s.*]*, Inc.*, . . . 489 A.2d 262, 266 ([Pa. Super.] 1985)." *Johnson v. Toll Bros., Inc.*, 302 A.3d 1231, 1235 (Pa. Super. 2023) (emphasis added).  Because a determination of when a project is *completed* is a mixed question of law and fact, the trial court was not bound by the allegations in the Complaint that the Jail was never completed.

The County also complains that the trial court did not have a legal or factual basis to conclude that the Occupancy Permit's issuance indicated that the Jail's construction had been completed.  *See* County Br. at 16.  Importantly, the Occupancy Permit's issuance was only one factor in the trial court's determination.  **Commissioner Sobel testified that the Jail had been employing staff and housing prisoners since 1981**.  *See* R.R. at 205a.  The trial court found:

> [T]he evidence conclusively establishes that the Jail's construction was completed in 1981.  [The Occupancy Permit] was issued by [L&I] on March 4, 1981[,] **and prisoners were being housed there that same year**.  The instant lawsuit was commenced in 2023 - a lapse of 42 years since completion.

---

[6] The County constructs a detailed statutory construction argument relying, in part, on dictionary definitions to define the term *completion*.  The County ignores case law that has directly defined the term as used in Section 5536.

R.R. at 329a (emphasis added). Based on Commissioner Sobel's testimony regarding the date when the Jail's use began, the trial court could reasonably conclude that "the entire construction project [was] so completed [in 1981] that it c[ould] be used by the general public[,]" *Noll*, 643 A.2d at 84, and in 1981, "third parties [were] first exposed to defects in design, planning, or construction [at the Jail]." *Johnson*, 302 A.3d at 1235 (quoting *Catanzaro*, 489 A.2d at 266). Accordingly, the trial court did not err by concluding that, for purposes of Section 5536, the Jail's construction had been completed in 1981.

Additionally, the County asserts that the trial court erred by finding that the County could not overcome the Statute of Repose by invoking the doctrine of *nullum tempus*.

This Court has explained that *nullum tempus* applies to circumvent applicable **statutes of limitations**. *See Allegheny Intermediate Unit v. E. Allegheny Sch. Dist.*, 203 A.3d 371, 378 (Pa. Cmwlth. 2019).

The Pennsylvania Supreme Court has described:

"Statutes of repose differ from statutes of limitation in that statutes of repose potentially bar a plaintiff's suit before the cause of action arises, whereas statutes of limitation limit the time in which a plaintiff may bring suit after the cause of action accrues." *McConnaughey v. B[ldg.] Components, Inc.*, . . . 637 A.2d 1331, 1332 n.1 ([Pa.] 1994). Because it eliminates a plaintiff's cause of action "12 years after completion of construction of [an improvement to real property]," regardless of when the plaintiff's injury occurs, both Pennsylvania and federal courts have consistently held that [Section 5536] is a statute of repose. *See, e.g., Noll* . . . , . . . 643 A.2d [at] 84 . . . ("Section 5536 is a statute of repose, rather than a statute of limitations. . . . As a statute of repose, Section 5536 does not merely bar a party's right to a remedy as a statute of limitations does, but it completely abolishes and eliminates the cause of action. . . ."); *Misitis v. Steel City Piping Co.*, . . . 272 A.2d 883, 885 ([Pa.] 1971) (The Act of 1965, the predecessor to [Section 5536], "completely

eliminates all causes of action arising out of negligence in construction or design which occurred more than [12] years before the accident. . . ."); *Mitchell v. United Elevator Co., Inc.*, . . . 434 A.2d 1243, 1249 ([Pa. Super.] 1981) ("The Act of 1965 . . . does not merely bar a litigant's right to a remedy, as a statute of limitations does, but the Act [of 1965] completely abolishes and eliminates the cause of action itself. By eliminating a cause of action, the Act of 1965 is a statute of repose. . . ."); *Altoona Area Sch*[.] *Dist*[.] *v. Campbell*, . . . 618 A.2d 1129, 1134 (Pa. Cmwlth. 1992) ("Section 5536 is couched in the language of a statute of repose, rather than a statute of limitation[s], because it contains words describing a definitely established event which commences the statutorily determined period of 12 years. . . ."); *Luzadder v. Despatch Oven Co*[.], 834 F.2d 355, 358 (3d Cir. 1987) ("[Section] 5536, which bars actions not brought within [12] years of the making of the improvement to real property, is drafted not as a statute of limitations but as a statute of repose. . . ."). We see no reason to deviate from this well-established precedent. Accordingly, we hold that [Section] 5536 is a statute of repose, not a statute of limitations.

*Vargo v. Koppers Co., Inc., Eng'g & Constr. Div.*, 715 A.2d 423, 425-26 (Pa. 1998) (footnotes omitted).

"The doctrine of *nullum tempus* . . . generally provides that statutes of limitations do not bar actions brought by a state or its agencies. 'Under the doctrine of *nullum tempus*, statutes of limitations are not applicable to actions brought by the Commonwealth or its agencies unless a statute expressly so provides.' (Citations omitted.) **Local governments are political subdivisions of a state and are entitled to assert the *nullum tempus* privilege under only limited circumstances**. **In order for *nullum tempus* to apply**, **a municipality's claims must** (1) accrue to the municipality in its governmental capacity and (2) **seek to enforce an obligation imposed by law as distinguished from one arising out of an agreement voluntarily entered into by the defendant**." *City of Phila*[.] *v. Lead Indus*[.] *Ass*['n]*, Inc.*, 994 F.2d 112, 118-119 (3d Cir. 1993).

*Del. Cnty. v. First Union Corp.*, 929 A.2d 1258, 1261 (Pa. Cmwlth. 2007), *aff'd*, 992 A.2d 112 (Pa. 2010) (bold emphasis added).

The County has cited no authority explicitly supporting its assertion that the doctrine of *nullum tempus* applies to the Statute of Repose in the same way as it applies to statutes of limitations. It cites *Altoona Area School District v. Campbell*, 618 A.2d 1129 (Pa. Cmwlth. 1992), claiming that the *implication* of this Court's holding in *Campbell* "is that if the school district had sought to vindicate obligations imposed by law, rather than obligations arising from its own voluntary transactions, the doctrine of *nullum tempus* would have defeated the 12-year limitation of the [S]tatute of [R]epose." County Br. at 21-22.

In *Campbell*, the school district brought a breach of contract action against architects and a contractor who had built a library 18 years earlier. The defendants sought summary judgment based on Section 5536 and on Section 5523 of the Judicial Code, 42 Pa.C.S. § 5523.[7] The trial court denied summary judgment. On appeal this Court stated:

> [I]n the present case, [the school d]istrict was not obligated by law to enter into a contract to construct the library, but instead, entered into the contract voluntarily as it was authorized to do under The Library Code.[8] The present case is, therefore, distinguishable from two recent

---

[7] Section 5523 of the Judicial Code, entitled "[o]ne year limitation," specifies:

The following actions and proceedings must be commenced within one year:

(1) An action for libel, slander[,] or invasion of privacy.

(2) An action upon a bond given as security by a party in any matter, except a bond given by a condemnor in an eminent domain proceeding.

(3) An action upon any payment or performance bond.

42 Pa.C.S. § 5523.

[8] The former Library Code, Act of June 14, 1961, P.L. 324, *as amended*, 24 P.S. § 4401-4428, was repealed by Section 3(2)(i) of the Act of November 1, 2012, P.L. 1683.

Superior Court cases, *Stroudsburg Area School District v. R.K.R. Associates*, . . . 611 A.2d 1276 ([Pa. Super.] 1992), and *Mt. Lebanon School District v. W.R. Grace & Co.*, . . . 607 A.2d 756 ([Pa. Super.] 1992), which held that a school district was entitled to invoke the doctrine of *nullum tempus* to defeat the applicable statutes of limitations because it was asserting claims arising out of the constitutionally and statutorily mandated duty of school districts to construct and maintain schools for the children of the Commonwealth.

*Campbell*, 618 A.2d at 1132-33. The *Campbell* Court further observed:

[T]he [d]istrict, in contracting to build the library, was not acting in accordance with obligations imposed by law, but was, rather, voluntarily entering into an agreement under the enabling statutes of The Library Code. Therefore, in bringing the action against [the a]ppellants, [the d]istrict was not seeking to enforce and vindicate obligations imposed by law, but was, rather, seeking to enforce and vindicate obligations arising from its own voluntary transactions. Consequently, [the d]istrict cannot properly invoke the doctrine of *nullum tempus* to defeat the 12[-]year limitation contained in [S]ection 5536 or the [1-]year limitation contained in [S]ection 5523 [of the Judicial Code].

*Campbell*, 618 A.2d at 1134. The *Campbell* Court concluded:

[B]ecause [S]ection 5536 is a statute of repose, the running of the 12[-]year period of limitation commenced when construction of the marble facade was completed in May of 1969. Therefore, [the d]istrict's cause of action against [the a]rchitects, [c]ontractor and [s]ubcontractor for any deficiency in the design, planning, supervision or observation of construction or construction of the marble facade, or injury to the facade, has been completely eliminated because it was brought over 18 years after the completion of the facade.[9]

---

[9] In contrast, with respect to summary judgment under Section 5523 of the Judicial Code, the *Campbell* Court held:

*Id*. at 1134-35 (citation omitted).

Assuming, arguendo, that the doctrine of *nullum tempus* did apply to statutes of repose,[10] in order for the doctrine to apply in this case, the County would

---

> However, the cause of action against [c]ontractor and [s]urety on the performance bond has not been completely eliminated because [S]ection 5523 [of the Judicial Code] is a statute of limitations, not a statute of repose, and is thus subject to the discovery rule. The discovery rule tolls the running of a statute of limitation until the plaintiff knows or reasonably should know that an injury has occurred.

*Campbell*, 618 A.2d at 1135 (citations omitted).

[10] In *Belle Vernon Area School District v. Tremco Inc.*, 2023 U.S. Dist. LEXIS 145001, *11-14, 2023 WL 5337286 (W.D. Pa. 2023), the U.S. District Court for the Western District of Pennsylvania rejected the application of *nullum tempus* to Section 5536, explaining:

> As a law review article on the topic has noted: "Courts that fail to account for the distinction between statutes of limitation and repose do so because they fail to look deeper into the policies behind the differing statutes." Joseph Mack, *Nullum Tempus: Governmental Immunity to Statutes of Limitation, Laches, and Statutes of Repose*, 73 Def. Couns. J. 180, 194 (2006). Further[,]
>
> > [*n*]*ullum tempus* excuses governmental actors on the basis of public policies that are undermined when applied to statutes of repose. The first policy argument for *nullum tempus*, that governmental actors are sometimes too busy looking after the welfare of the state to bring suit in time, is only a legitimate excuse when the time limitation is contingent on knowing delay by the plaintiff. This policy argument is sound when applied to immunity from statutes of limitation and laches because those doctrines require that delay before they serve to protect defendants. However, where statutes of limitation under the discovery rule and laches will only protect the defendant's interests when there is delay by the plaintiff after gaining knowledge of the injury, statutes of repose can bar a claim even before the victim knows they have been injured. Since statutes of repose offer no exceptions for good

12

excuses, the justifications for the government's delay are irrelevant.

The second policy justification for *nullum tempus*, to preserve the public assets from the negligence of public officials, is also much less persuasive in the context of statutes of repose. The legislature's decision to absolutely limit the timeframe in which certain types of defendants may be sued is motivated by fear of the economic impact of timeless liability on their beneficial services. The legislature has determined that the economic stability of the classes of defendants protected by statutes of repose outweighs the state's interest in providing a remedy. An argument that governmental bodies should be immune to the balance struck by the legislature in order to preserve public assets cannot be successful because the legislature has already determined that it is ultimately better for the general public to limit the liability. Again, this is distinguished from statutes of limitations and laches on the grounds that those doctrines provide far less stability for defendants because of the requirement of knowing delay. Indeed, it is the exact purpose of statutes of repose to protect defendants from the elastic nature of statutes of limitations and laches because of the doctrines' focus on the plaintiffs.

Not only are the policy considerations behind *nullum tempus* severely undermined by the purposes behind statutes of repose, but the very fact that the legislature has enacted such statutes is indicative of the exact type of change in circumstances that should compel a court to discard a common law doctrine. The legislative action to protect a group at the risk of depriving completely blameless plaintiffs of their causes of action makes it clear that any interference with that protection "is no longer reflective of economic and social needs of society."

*Id*. at 194-95 (footnote omitted).

Because no clear authority from a Pennsylvania court authorizes the use of *nullum tempus* to defeat a statute of repose defense under [Section] 5536, and the only case to explicitly address the issue

13

need to demonstrate (1) that it built the Jail in its governmental capacity; and (2) in building the Jail, it was enforcing "an obligation imposed by law as distinguished from one arising out of an agreement voluntarily entered into by the defendant." *Del. Cnty.*, 929 A.2d at 1261 (quoting *Lead Indus. Ass'n*, 994 F.2d at 118-119). The trial court agreed that the County satisfied the first criteria. With respect to the second criteria, the County contends that it was obligated to build a county jail. In support, the County references numerous statutory provisions which clearly *authorize* counties to construct jails. However, the County asks this Court to interpret those statutory provisions as *obligating* counties to do so.

> The County asserts:

> The authority of the Commissioners to order the construction of the . . . [J]ail is inherent in the broad powers granted to them by the Pennsylvania General Assembly. "The county commissioners shall be the responsible managers and administrators of the fiscal affairs of their respective counties in accordance with the provisions of this act and other applicable law." [Section 1701 of the County Code, Act of August 9, 1955, P.L. 323, *as amended*,] 16 P.S. § 1701. "The corporate power of each county shall be vested in a board of county commissioners.["] [Section 203 of the County Code,] 16 P.S. § 203. "Each county shall have capacity as a body corporate to . . . (4) [m]ake contracts for carrying into execution the laws relating to counties and for all lawful purposes . . . [; and] (6) [t]o make appropriations for any purpose authorized by this or any other act of the General Assembly[.]"] [Section 202 of the County Code,] 16 P.S. § 202.

County Br. at 22-23. The aforementioned statutory provisions provide general statutory *authority* for county commissioners to exercise certain powers.

---

rejects it, this Court predicts that the Pennsylvania Supreme Court, if presented with this question, would not apply *nullum tempus* in this case.

*Belle Vernon*, slip op. at ____, 2023 U.S. Dist. LEXIS 145001, *11-14, 2023 WL 5337286.

14

The County further contends that, pursuant to Section 2404-B of the Administrative Code of 1929 (Administrative Code),[11] 71 P.S. § 655, the General Assembly *authorized* county commissioners to construct jails.[12] That provision merely provides criteria for commissioners to consider when constructing or renovating jails. Nothing in Section 2404-B of the Administrative Code imposes an affirmative duty on commissioners to construct county jails.

Citing Section 1723 of the Prisons and Parole Code, 61 Pa.C.S. § 1723, the County claims that "[t]he General Assembly also mandates that each county in the Commonwealth have a county jail oversight board[,]" County Br. at 23, and that

---

[11] Act of April 9, 1929, P.L. 177, *as amended*, added by Section 11 the Act of October 30, 2017, P.L. 379.

[12] Section 2404-B of the Administrative Code provides:

> **(a) Criteria**.--The board of commissioners shall, in addition to compliance with the terms, conditions and requirements set forth in the request for proposals, consider the following criteria in evaluating proposals for the adaptive reuse of former jail facilities or construction of new jail facilities:
>
>> (1) The cost of the proposer's adaptive reuse or new construction proposal.
>>
>> (2) Experience of the proposer.
>>
>> (3) Preservation of the distinct architectural design and integrity of the former jail facilities.
>>
>> (4) Adherence to prevailing wage laws and other work force standards.
>>
>> (5) Commitment to enter into voluntary contracts with disadvantaged business enterprises.
>
> **(b) Selection of proposal**.--After due consideration of proposals in accordance with the criteria under subsection (a), the board of commissioners may select a proposal and award a contract to a responsible proposer for the adaptive reuse of a former jail facility or construction of a new jail facility under an alternative contracting procedure.

71 P.S. § 655.

"[i]mplicit in the statutory mandate that each county in the Commonwealth have a jail oversight board with duties to oversee matters relative to the maintenance and operation of a jail, is the converse mandate that counties construct jails for the jail oversight board to oversee and maintain." *Id*. at 24.

Section 1723 of the Prisons and Parole Code, which became effective in 2009, states, in pertinent part:

> **(a) Establishment**.--There is hereby established <u>in each county a county jail oversight board</u> which shall be named the (Name of County) County Jail Oversight Board. The board shall be a continuation of the county prison board originally established under the former [A]ct of December 10, 1980 (P.L. 1152, No. 208), known as the Second Class County Prison Board Act, and former Article XXX-A of the [A]ct of July 28, 1953 (P.L. 723, No. 230), known as the Second Class County Code.
>
> . . . .
>
> **(d) Counties that may elect to be subject to subchapter**.--Any county that has adopted a home rule charter may elect by resolution of the governing body of the county to be governed by the provisions of this subchapter.

61 Pa.C.S. § 1723 (underline emphasis added).

Importantly, Section 1722 of the Prisons and Parole Code defines "county" as used in the subchapter as "[a] county **of the second class** or a county that has elected to be governed by the provisions of this subchapter under [S]ection 1723(d) (relating to county jail oversight board)." 61 Pa.C.S. § 1722 (emphasis added). Thus, Section 1723 of the Prisons and Parole Code does **not** "mandate[] that **each county in the Commonwealth** have a county jail oversight board[.]" County Br. at 23 (emphasis added). Section 1723 of the Prisons and Parole Code applies only to second class counties and counties that have adopted home rule charters that elected to be subject to the subchapter's provisions. The County is not

16

a second class county and, accordingly, Section 1723 of the Prisons and Parole Code is not applicable. Further, there is no record evidence that the County adopted a home rule charter and elected to be subject to the subchapter. In addition, Section 1723 of the Prisons and Parole Code was not enacted until 2009, approximately 28 years after the Jail's construction was completed. Therefore, Section 1723 of the Prisons and Parole Code could not have been a mandate for the Jail's construction.

Finally, the County contends that "implicit in the [c]onstitutional mandate and statutory mandate to set conditions for bail [under article I, section 14 of the Pennsylvania Constitution,[13]] is the converse mandate that counties construct jails to house pretrial detainees who are unable to secure bail." County Br. at 24. However, the government's obligation to set bail conditions and responsibility to house prisoners is not a mandate that each county construct its own jail.

Based on the foregoing, this Court concludes that, in building the Jail, the County was not enforcing "an obligation imposed by law as distinguished from one arising out of an agreement voluntarily entered into by the [County]." *Del. Cnty.*, 929 A.2d at 1261 (quoting *Lead Indus. Ass'n*, 994 F.2d at 118-119). Thus, the doctrine of *nullum tempus* did not apply to defeat the Statute of Repose's 12-year limitation.

---

[13] Article I, section 14 of the Pennsylvania Constitution declares:

> All prisoners shall be bailable by sufficient sureties, unless for capital offenses or for offenses for which the maximum sentence is life imprisonment or unless no condition or combination of conditions other than imprisonment will reasonably assure the safety of any person and the community when the proof is evident or presumption great; and the privilege of the writ of habeas corpus shall not be suspended, unless when in case of rebellion or invasion the public safety may require it.

PA. CONST. art. I, § 14.

17

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Clearfield County, Pennsylvania, :
      Appellant :
          :
    v.     :
          :
Transystems Corporation,   :
successor to L. Robert Kimball and :
Associates, Inc., Leonard S. Fiore, Inc., : No. 193 C.D. 2024
and Showalter Masonry, Inc.  :

## O R D E R

AND NOW, this 1st day of November, 2024, the Clearfield County Common Pleas Court's February 15, 2024 order is affirmed.

_____
ANNE E. COVEY, Judge