561 A.2d 53

**POCONO TOWNSHIP**

**v.**

**Anna R. HALL, Pocono Land and Homes, Inc. and Thomas Victor Ventre.**

**Appeal of Thomas Victor VENTRE.**

**POCONO TOWNSHIP**

**v.**

**Anna R. HALL, Pocono Land and Homes, Inc. and Thomas Victor Ventre.**

**Appeal of Anna R. HALL.**

Commonwealth Court of Pennsylvania.

Argued April 4, 1989.

Decided June 22, 1989.

David A. Martino, Zito, Martino and Karasek, Brodheads-ville, for appellant, Thomas Victor Ventre.

Steven M. Gordon, Pocono Lake, for appellant, Anna R. Hall.

Phillip H. Williams, Stroudsburg, for appellant, Pocono Land and Homes, Inc.

Timothy J. McManus, Cramer, Swetz & McManus, Stroudsburg, for appellees, Pocono Township.

Before CRAIG, McGINLEY, (P.), JJ., and NARICK, Senior Judge.

CRAIG, Judge.

Thomas Victor Ventre and Anna R. Hall appeal from an order of Judge Peter J. O'Brien of the Court of Common Pleas of Monroe County that denied their motions for post-trial relief and affirmed the court's previous order declaring that they were liable to Pocono Township on certain road bonds.

The issues are (1) whether a township may enforce "road bonds" executed in its favor by developers in connection with the township's approval of plans for subdivisions, to compel the paving of unfinished roads within the subdivisions, where the bonds, which were drafted by the developers, state that the obligations would mature when application is made to the supervisors to take over the roads, and (2) whether the statute of limitations applicable to actions on bonds bars the township from attempting to enforce these bonds after the statutory period has run from the time when the bonds were executed.

## History

The facts as found by the trial court are as follows. On July 31, 1973, the supervisors of Pocono Township approved a plan for a subdivision known as "Cherry Lane Estates" at the request of Thomas Victor Ventre, and on August 7, 1974, the supervisors approved a final plan of lots for "Hallmark Acres" at the request of Anna R. Hall and her late husband Wilbur L. Hall. The plan approved for Thomas Ventre included a covenant that "[a]ll roads will be constructed to comply with minimum standards, of Pocono Twp. and the State of Penna." The plan approved for Anna and Wilbur Hall included a covenant that "[a]ll roads shall be constructed with grades less than 12% and in full accordance with township and state regulations."

On March 20, 1973, Pocono Township had enacted a revised subdivision ordinance. Section 12.9 of that ordi-

nance required the owner or developer, before approval of any plot plan, to deposit money in escrow or to provide a performance bond or some other security in an amount sufficient to cover the cost of blacktopping or paving the roads in the development.[1]

The day before the approval by the supervisors of Pocono Township for the plan of Cherry Lane Estates, Thomas Ventre executed a "road bond" in favor of the supervisors of Pocono Township in the amount of $13,300. Two days before final approval of the plan for Hallmark Acres, Anna R. Hall and Wilbur L. Hall executed a "road bond" in favor of the supervisors in the amount of $40,000, intending to bind themselves and their heirs and assigns. The bond executed by Anna and Wilbur Hall contains the following paragraph:

> The condition of this obligation is that if the above bounden Wilbur L. Hall and Anna R. Hall, his wife, shall and do cause the roads in and about their real estate development to be surfaced in accordance with the Township Ordinances existing as of the hereinafter set forth date, when application is made to the Supervisors of Pocono Township, Monroe County, Pennsylvania, to take over the roads, then this obligation shall be null and void

1. The full text of section 12.9 of the Pocono Township Zoning Ordinance is as follows:

12.9. The Supervisors of Pocono Township, prior to the approval of any plot plans, require the owner or developer to submit a financial statement and deposit in escrow a sum of money sufficient, at time of request for approval, to cover the costs of blacktopping or paving the roadways thereon or in lieu of such payment to provide a performance bond or some other security as the Supervisors deem acceptable at the time of submission of plans for approval.

A. All new roads shall be blacktopped a minimum of 20 feet wide with three (3) feet shoulders on each side, 2½ in. of 1D-2 bituminous concrete or CP-2 surface in accordance with the latest specifications of the Pennsylvania Department of Transportation placed over a suitable base of a minimum of 8 in. of shale.

B. The grade of the road shall not exceed 12%.

C. During construction of the road, base and finish surfacing the supervisors reserve the right to have an authorized representative at the site to inspect the construction. This shall be at the expense of the subdivider.

and of no further effect. Compliance with the condition of the within obligation shall be based solely upon the certification of the Township Engineer.

R. 10a. Ventre's bond has an essentially identical provision. The court specifically found that, during 1973 and 1974, road bonds were not prepared by the solicitor for Pocono Township but were prepared by the attorneys for the developers.[2]

In 1979, Anna R. Hall and Wilbur L. Hall conveyed the remaining lots in Hallmark Acres to Pocono Land and Homes, Inc. (Pocono Homes). The deed of conveyance identified the lots being conveyed by reference to the "Final Plan of Lots, Hallmark Acres."

Thomas Ventre has not paved the roads in Cherry Lane Estates in accordance with township regulations, and he has not offered the roads for dedication to the township. Anna and Wilbur Hall did not pave the roads in Hallmark Acres. Pocono Homes paved the main roads in Hallmark Acres in accordance with township specifications and dedicated those roads to the township. However, the interior roads of Hallmark Acres have not been paved and have not been offered for dedication. The residents of both Cherry Lane Estates and Hallmark Acres have asked the township to require that the roads be paved in accordance with township regulations and be dedicated to the township.

The township brought this action for declaratory relief pursuant to the Declaratory Judgments Act, 42 Pa.C.S. §§ 7531–7541, requesting an interpretation from the court of the enforceability of these bonds in the absence of an application by Ventre, Hall or Pocono Homes for dedication of the roads.

After a hearing and consideration of memoranda submitted by the parties, the court issued an order declaring

---

**2.** Thomas Ventre testified that the township solicitor prepared his road bond. Patrick Ross, a supervisor of the township and former member of its planning commission, testified that road bonds were not prepared by the township's solicitor during the period in question, but rather by attorneys for developers. The court's resolving this conflict in testimony in favor of the township's witness obviously did not constitute an abuse of discretion, as Mr. Ventre suggests.

that Anna R. Hall and Pocono Homes are jointly and severally liable to the township on the road bond dated August 5, 1974, conditioned upon full compliance with the provisions of the subdivision ordinance of Pocono Township, adopted March 20, 1973, and that Thomas Ventre is liable to the township on the road bond dated July 30, 1973, with the same condition. After the court's denial of their motions for post-trial relief, Thomas Ventre and Anna R. Hall appealed to this court.

### Statute of Limitations

Ventre contends that the township should be barred from enforcing the provisions of these bonds by the statute of limitations applicable to actions upon contracts, bonds or other obligations founded upon a writing.[3] The trial court noted that our Supreme Court has held:

[U]nless otherwise provided, statutes of limitations cannot be pleaded against ... political subdivisions when they are seeking to enforce strictly public rights, that is, when the cause of action accrues to them in their governmental capacity and the suit is brought to enforce an obligation imposed by law as distinguished from one arising out of an agreement voluntarily entered into by the defendant.

City of Philadelphia v. Holmes Electric Protective Co., 335 Pa. 273, 278, 6 A.2d 884, 887 (1939). In Holmes, the City of Philadelphia agreed to permit a private burglar and fire alarm company to run its wires under the city streets in exchange for payments calculated from the gross receipts of the company. After an audit, the city decided that the company had not reported all of its gross receipts for a period of nineteen years and brought an action to collect the extra payments. Ventre contends that Holmes supports his position, because, after reciting the principle quoted above,

3. Although Ventre mentions section 5527 of the Judicial Code, 42 Pa.C.S. § 5527, the six-year limitation, the township notes that actions upon contracts, bonds and other obligations founded upon writings currently are governed by the four-year limitation period of section 5525, 42 Pa.C.S. § 5525.

the Court concluded that it was not applicable to the facts of that case, noting that the consideration exacted was neither a tax nor a license fee, but rather was in the nature of an annual rental to be paid for the privilege of the use of the space under the streets. Therefore, the Court held that the statute of limitations applied.

In this case, the trial court held that the township's action on the road bonds, issued in accordance with the subdivision ordinance, fell within the Supreme Court's description of an action to enforce strictly public rights, because the purpose of such ordinances is primarily to protect the public rights of people who choose to purchase lots and live in a municipality, and courts must enforce the responsibilities of developers to meet the reasonable requirements imposed upon them by governing bodies, which requirements clearly include that of proper access to and from homes within a development. The trial court correctly identified the quintessentially governmental purpose of the bonds at issue in this case and distinguished that from the purely private purpose involved in the city's rental of space to a private company that was involved in *Holmes*.[4]

### Enforceability of the Road Bonds

■ After explaining why the circumstances of this case are appropriate for a declaratory judgment proceeding, and

---

**4.** The township is incorrect in its assertion that the immunity of the sovereign from subjection to statutes of limitation, in the absence of express provision to the contrary, extends to political subdivisions as well. *Holmes* expressly stated otherwise. 335 Pa. at 278, 6 A.2d at 887 (citing *Evans v. Erie County*, 66 Pa. 222, 228 (1870); *Commonwealth v. Perry*, 330 Pa. 355, 360, 199 A. 204 (1938)). However, the township's other fallback position is correct. The former version of section 5527(2) provided, and the present version of section 5525(7) provides, "[w]here such an instrument [bond, note or other similar instrument in writing] is payable upon demand, the time within which an action on it must be commenced shall be computed from the later of either demand or any payment of principal of or interest on the instrument." Although the road bonds involved here were executed in the early 1970's, they should be construed as demand instruments, and the township did not make a demand upon them until, at the earliest, approximately one and one-half years ago. Ventre, on the other hand, does not identify the event that he considers to mark the beginning of the running of the period of limitation.

why he resolved the conflict in testimony regarding authorship of the bonds in favor of the township, the trial judge began his analysis of the issue of the enforceability of these bonds in the absence of an offer of dedication of the roads by quoting the full text of section 12.9 of the Pocono Township Zoning Ordinance, *see* n. 1, above. The court explained that the obvious intention of section 12.9 was to protect the public rights of persons who would purchase lots in developments in reliance upon the supervisors' approval of the plans for those developments. The court noted that the plans for the developments, which were recorded in the office of Recorder of Deeds, explicitly provided that the roads depicted on the maps would be built in accordance with township specifications. As the township emphasizes in its brief, both plans contain covenants to build the roads in accordance with township and state regulations, without any qualifications relating to offers to dedicate the roads. The court noted that persons purchasing lots in the plans were entitled to rely on the language of the ordinance itself, requiring completion of the roads, and on covenants written on the plans promising that the requirements of the ordinance would be fulfilled. The court cited *Nicholas' Liquor License Case*, 131 Pa.Superior Ct. 330, 200 A. 313 (1938), for the proposition that where a bond is given under the authority of a statute or ordinance in force when it is executed, the law presumes that the intention of the parties was to execute such a bond as the law required, and such statute or ordinance constitutes a part of the bond which must be construed in connection with the statute or ordinance. Therefore, the court held that these road bonds, submitted in compliance with section 12.9 of the ordinance, must be construed in conjunction with the ordinance.

In addition to the ordinance itself, the statute authorizing such an ordinance is applicable to the problem of construing these bonds. At the time the bonds were executed, section 509 of the Pennsylvania Municipalities Planning Code

(MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10509, provided as follows:

### § 10509. Completion of improvements or guarantee thereof prerequisite to final plat approval

No plat shall be finally approved unless the streets shown on such plat have been improved as may be required by the subdivision and land development ordinance and any walkways, curbs, gutters, street lights, fire hydrants, shade trees, water mains, sanitary sewers, storm drains and other improvements as may be required by the subdivision and land development ordinance have been installed in accordance with such ordinance. In lieu of the completion of any improvements required as a condition for the final approval of a plat, the subdivision and land development ordinance may provide for the deposit with the municipality of a corporate bond, or other security acceptable to the governing body in an amount sufficient to cover the costs of any improvements which may be required. Such bond, or other security shall provide for, and secure to the public, the completion of any improvements which may be required within the period fixed in the subdivision and land development ordinance for such completion. In the case where development is projected over a period of years, the governing body or the planning agency may authorize submission of final plats by section or stages of development subject to such requirements or guarantees as to improvements in future sections or stages of development as it finds essential for the protection of any finally approved section of the development.

Section 511 of the MPC, 53 P.S. § 10511, provided for remedies to effect completion of improvements:

### § 10511. Remedies to effect completion of improvements

In the event that any improvements which may be required have not been installed as provided in the subdivision and land development ordinance or in accord with the approved final plat the governing body of the munici-

pality is hereby granted the power to enforce any corporate bond, or other security by appropriate legal and equitable remedies. If proceeds of such bond, or other security are insufficient to pay the cost of installing or making repairs or corrections to all the improvements covered by said security, the governing body of the municipality may, at its option, install part of such improvements in all or part of the subdivision or land development and may institute appropriate legal or equitable action to recover the moneys necessary to complete the remainder of the improvements. All of the proceeds, whether resulting from the security or from any legal or equitable action brought against the developer, or both, shall be used solely for the installation of the improvements covered by such security, and not for any other municipal purpose.

Ventre cites *Phillippe v. Jerome H. Rhoads, Inc.*, 233 Pa.Superior Ct. 503, 336 A.2d 374 (1975), for the proposition that an agreement or instrument that reduces legal rights is strictly construed against the party asserting it and must spell out with the utmost particularity the intention of the party. *Phillippe* was a case in which the Superior Court upheld a clause in a contract between a gasoline wholesaler and a retailer that indemnified the wholesaler with regard to damages caused by gasoline storage and pumping equipment that it lent to the retailer. The precise source of the proposition cited by Ventre was the Superior Court's quotation of the Supreme Court in the case of *Galligan v. Arovitch*, 421 Pa. 301, 303, 219 A.2d 463 (1966), "[A]n agreement or instrument which reduces legal rights which would otherwise exist is strictly construed against the party asserting it and must spell out with the utmost particularity the intention of the parties."

As the township notes in its brief, the reference in the road bonds to an application to the township to take over the roads is ambiguous and may reflect only a presumption that once the roads were completed in accordance with

township specifications, the developer would then dedicate them to the township because there would be no reason for him not to do so. Yet another possible interpretation is that the developer's obligation persists *until* such time as he or she offers the roads for dedication to the township, and the township accepts; *then* the obligation becomes null and void. Ventre points to restrictive covenants in deeds from him to purchasers of lots in Cherry Lane Estates, relating to membership in a private organization for the upkeep of roads, as evidence of a lack of intent to dedicate the roads to the township. However, any lack of intent to dedicate the roads is in no way inconsistent with a duty to *complete* them.

In the face of the language of the statute, the ordinance and the covenants of the developers in the recorded plans, all requiring improvement of the roads without qualification, and *without limiting that requirement to dedicated roads,* the ambiguous language of the road bonds does not "spell out with the utmost particularity" an intention on the part of the township to relieve the developers of their duty to complete the roads and to substitute an option to complete the roads only if they chose to dedicate them to the township. The conclusion of the trial court that Thomas Ventre is liable to the township on the road bond that he executed and that Anna R. Hall and Pocono Land and Homes, Inc. are jointly and severally liable to the township on the bond that she executed, even though neither developer has made an offer to dedicate roads to the township, was without error and shall be affirmed.

## ORDER

### (Nos. 2368 and 2470 C.D.1988)

NOW, June 22, 1989, the order of the Court of Common Pleas of Monroe County, at No. 1260 Civil of 1987, dated September 22, 1988, denying motions for post-trial relief, is affirmed.