TOWNSHIP OF INDIANA, Appellant,

v.

ACQUISITIONS & MERGERS,
INC.; ComServ, Inc.; and
Fayette Bank.

Township of Indiana, Appellant,

v.

Acquisitions & Mergers, Inc.; ComServ,
Inc.; and Fayette Bank.

Township of Indiana

v.

Acquisitions & Mergers, Inc.; ComServ,
Inc.; and Fayette Bank Comserv,
Inc., Appellant.

Hartwood Estates Garden Club, Chester R. Babst, III, Mary Louise Babst, Nadav Baum, Nancy Baum, Bert Bettyschart, Gloria Bettyschart, Brita Bridenstine, James Bridenstine, Mark Caine, Judy Caine, Rick Carr, Valerie Carr, Robert Daigle, Joyce Daigle, Richard Dell, Janice Dell, Michael Fallert, Julianne Fallert, Nikhi Gandhi, Bharati Gandhi, Jai Ghatnekar, Revati Ghatnekar, Edward Gregg, Maureen Gregg, Rod Groomes, Jane Groomes, Sadhana Gupta, Daniel Herman, Tasi Herman, Ryon Hurh, Jane Hurh, Richard Insley, Joanne Insley, Randy Lee, Carolee Lee, John Maher, Mary Ellen Maher, Khalid Malik, Tanvir Malik, George Michalopoulos, Tricia Michalopoulos, Mark Mintun, Susan Mintun, Henry Niman, Lynn Niman, Bert Nord, Beth Nord, Douglas Ostrow, Nancy Ostrow, Wayne Rose, Gail Rose, Randhir Sahni, Ramona Sahni, John Schaefer, Carol Schaefer, Howard Senter, Carole Sen-

ter, Mark Silberg, Lisa Silberg, John Michael Studeny, Susan Davidson Studeny, John A. Tumolo, Cynthia Tumolo, Indiana Township, Dorothy T. Claus, David H. Morrow, David L. Taylor

v.

George Erceg, John S. Jesih, Kevin Prozek, Jeffrey D. Peck

v.

Acquisitions & Mergers, Inc., Fayette Bank, ComServ, Inc.

Comserv, Inc., Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 1, 1999.
Decided March 19, 2001.

Daniel P. Orie, Pittsburgh, for appellant.

Francis R. Murrman, Greensburg, for appellees.

Before PELLEGRINI, Judge, FLAHERTY, Judge, NARICK, Senior Judge.

FLAHERTY, Judge.

ComServ, Inc. (ComServ) appeals from an order of the Court of Common Pleas of Allegheny County (trial court) entering judgement against ComServ for breach of contract. In turn, the Township of Indiana (Township) cross-appeals from the trial court's order limiting ComServ's liability for its breach to $30,000. On November 6, 2000, this Court filed a previous opinion and order reversing the trial court's order in the above captioned matter. Thereafter, the Township filed an application for reargument, which we denied but alternatively elected to grant reconsideration resulting in withdrawal of our prior opinion and order. On reconsideration, for the reasons set forth herein, we confirm our original determination to reverse.

Acquisitions and Mergers (A & M), a residential developer, sought and obtained approval from the Township to develop an up-scale residential community known as Hartwood Estates Garden Club (Hartwood Estates). A & M obtained financing agreements from Fayette Bank and ComServ to develop Hartwood Estates in three phases. A & M also entered into separate development agreements for Phases I, II, and III. The development agreements set forth the scale and nature of the development for each phase of Hartwood Estates including the road and infrastructure improvements, Township specifications, approval process and the requirement to obtain a performance bond or set-aside agreement with an approved financial institution. The performance bond or set-aside requirement is intended to assure the Township that the lender will provide the Township with sufficient funds to complete the infrastructure improvements in the event that the developer fails to timely complete the project. For its part, the Township agreed to assume control and maintenance responsibility for the roads and sewers system within Hartwood Estates after A & M completed construction in accordance with the approved specifications.

Fayette Bank handled the Phase I loan and set aside agreement and ComServ handled the Phase II and III loans and set aside agreements (Set Aside Agreements). The Phase I transactions are not at issue on appeal.[1] As required under the terms of the Phase II Development

---

1. Although Fayette Bank and the Hartwood Estates Garden Club, et al, are captioned as parties in this matter, they have not appealed the trial court's order. Fayette Bank and the Hartwood Estates Garden Club, et al, were retained as parties in the caption on appeal pursuant to Pa. R.A.P. 904(b), which provides: "[t]he parties shall be stated in the caption as they stood upon the record of the lower court at the time the appeal was taken."

Agreement, in February 1990, the Township, A & M and ComServ entered into the Phase II Set Aside Agreement. ComServ agreed to reserve $119,647.00 from A & M's total development loan as "pledged funds" to ensure that these loan proceeds would be available for the Township to complete the infrastructure work should A & M fail to timely complete the work. The terms of the Phase II Set Aside Agreement specified that ComServ would incrementally disburse these pledged funds to A & M commensurate with the Township engineer's approval of portions of the infrastructure work. ComServ was not to disburse any funds without documentation reflecting the Township's approval of a completed portion of the improvements. Additionally, the agreement provided that if within one year of the signing of the agreement, A & M had not completed and obtained Township approval of the Phase II improvements, then "the Township will demand and receive payment of any balance remaining in the pledged funds and proceed to use the pledged funds [to complete the improvements] to the extent permitted by the funds so made available." (Phase II Set Aside Agreement, paragraph 5, R.R. at 345a). In August 1991, these same parties entered into the Phase III Set Aside Agreement that contained virtually identical provisions but for the $95,018.11 figure representing the pledged funds reserved for the infrastructure improvements in Phase III of Hartwood Estates.

The sale of property within Hartwood Estates was slower than anticipated causing A & M to delay completion of some infrastructure improvements. The parties do not dispute that A & M failed to complete its obligations under the Phase II and III Development Agreements. Although A & M constructed the Phase II and III roads to the extent of applying the initial base paving coat, the final paving coat was never applied to the roads. At a July 1993 public meeting, complaints from Hartwood Estate residents regarding the condition of their neighborhood roads prompted A & M to propose to the Township application of the final paving coat to the Phase II and III base roadways. However, the Township informally requested that A & M not complete the final paving work until 80% of the Phase II and III lots had been developed to minimize damage from construction traffic. After two further years of delay and complaints from residents, the Township requested that A & M apply the final paving coat in the Fall of 1995. A & M initially agreed but eventually refused to complete the work after receiving higher than expected estimates for the remaining paving work. In July 1996, the Township declared A & M in breach of the Phase II and III Development Agreements. The Township then turned to its guarantor, ComServ, for release of construction loan funds pledged for completion of the final Phase II and III paving. ComServ informed the Township that all pledged funds had been released when A & M paid off its construction loans in early 1992. When ComServ stated that it could not produce the pledged funds, the Township filed a complaint in equity with the trial court seeking ComServ's specific performance of the Phase II and III Set Aside Agreements.

Following hearings the trial court issued a decree nisi dated December 29, 1997.[2]

---

**2.** On November 14, 1996, at the outset of the litigation, the trial court issued a consent order signed by the Township and Hartwood Estates whereby the Township agreed to perform maintenance and snow removal from the streets within the development during the pending winter season. Likewise, on November 5, 1997, prior to final disposition, the trial court issued a similar consent order addressing maintenance and snow removal within

The trial court reached the following conclusions of law: 1) A & M breached its obligation under the Phase II and III Development Agreements to perform the final road paving and construct the sewer and retention pond improvements; 2) although the 80% rule imposed by the Township did not appear in any Township ordinance and was not contained in the Phase II and III Development or Set Aside Agreements, A & M could not now excuse its failure to perform since it made no effort to enforce its right to go forward with the paving work; 3) ComServ breached the provisions of the Phase II and III Set Aside Agreements by releasing the pledged funds on a periodic basis without requesting written approval of the Township for any partial release of pledged funds; and 4) nothing in the language of the Phase II and III Development or Set Aside Agreements states that the agreements automatically terminate after one year, or that the Township is mandated to call upon Fayette Bank or ComServ to obtain any remaining available pledged funds after one year from the date of execution of said contract in the event of A & M's failure to perform. (Trial Court Decision and Decree Nisi, December 29, 1997, Conclusions of Law at 4). The trial court's decree nisi directed the Township to accept as Township property the roads, sewers, retention ponds and common areas of Hartwood Estates, and to perform all remedial repairs and paving work for all phases of Hartwood Estates.[3] The decree nisi also directed ComServ to make all pledged funds available to the Township for the Phase II and III road and infrastructure improvements.[4]

On January 9, 1998, ComServ filed a request for post-trial relief and reconsideration of the trial court's decree nisi. On June 10, 1998, the trial court issued its final order, which granted, in part, ComServ's request for post-trial relief. The trial court's final order essentially confirmed its prior disposition but modified the decree nisi by limiting ComServ's liability and vacating the remaining consent order concerning road maintenance and snow removal. Rather than requiring ComServ to make all pledged funds available to the Township, the final order only required ComServ to pay $30,000 toward completion of the Phase II and III road and infrastructure improvements. Thereafter, ComServ and the Township filed cross appeals of the trial court's final order

the development during that forthcoming winter season.

3. Maintenance of the storm water retention ponds and common areas was to be the responsibility of the Hartwood Estates homeowners association, which A & M was to implement through restrictive covenants binding property owners to the terms and conditions of the association. However, the homeowners association never materialized because A & M neglected to include this restrictive covenant in the deeds issued to purchasers of Hartwood Estates property, and thus, resulted in no entity being vested with responsibility for completion and maintenance of the storm water retention facilities. (Trial Court Decision and Decree Nisi, December 29, 1997, Findings of Fact at 3).

4. The decree nisi also stated that A & M was ultimately responsible for all costs incurred in the completion of the Phase I, II and III road construction. The trial court noted that Fayette Bank and ComServ could initiate separate causes of action against A & M to recover any amounts expended pursuant to the trial court's decree. Lastly, the trial court decreed that A & M, Fayette Bank and ComServ were jointly and severally liable for all costs incurred by the Township for temporary repairs and snow removal pursuant to both consent orders prior to the Township's acceptance of the roadways as Township public roads. (Trial Court Decision and Decree Nisi).

with this Court.[5]

ComServ presents four issues on appeal. First, whether the trial court erred when it failed to apply the applicable statute of limitation. Second, whether the trial court erred when it failed to dismiss the action based on the defense of the doctrine of laches. Third, whether the trial court's final order is unsupported by the record and represents an abuse of discretion. Fourth, whether the trial court erred when it failed to dismiss the action based on the absence of consideration to support the Phase II and III Set Aside Agreements.

On cross appeal, the Township presents three issues for our consideration. First, whether the doctrine of nullum tempus bars ComServ from asserting its statute of limitation defense.[6] Second, whether the trial court abused its discretion by limiting ComServ's liability to $30,000 rather than requiring specific performance of the set aside agreements as directed in the original decree nisi. Third, whether the Township is protected by statute from being required to pay a portion of the cost to complete infrastructure improvements prior to public dedication when sufficient funds are available under the Phase II and III Set Aside Agreements.

We shall first address the Township's nullum tempus argument, which it raised for the first time in the application for reargument submitted following this Court's original opinion and order. The Township contends that the doctrine of nullum tempus precludes ComServ from asserting its statute of limitation defense. The Township argues that nullum tempus is akin to the absolute defense of sovereign immunity, which is not subject to waiver. ComServ disagrees and asserts that the Township waived its nullum tempus argument when it neglected to raise it during any point of the proceedings prior to its reargument application before this Court. Alternatively, ComServ contends that nullum tempus does not apply in the instant matter because the Township originated suit to enforce purely contractual rights arising out of the Development and Set Aside Agreements and not to enforce a public right or obligation imposed by law.

ComServ asserts, and the Township concedes, that it did not raise the doctrine of nullum tempus in the pre-trial pleading phase, at trial, during the post-trial motion phase or at any time prior to this Court's initial disposition of the instant appeal. Given the Township's admitted failure to raise nullum tempus as a bar to ComServ's statute of limitation defense during any litigation phase, we begin with the first impression question regarding the applicability of waiver to the doctrine of nullum tempus.[7] Initially we note that the doctrines of sovereign immunity and nul-

---

**5.** Our standard of review in equity matters is limited to determining whether the trial court committed an error of law or an abuse of discretion. *Bortz v. Noon*, 556 Pa. 489, 497, 729 A.2d 555, 559 (1999). The scope of review of a final decree in equity is limited and will not be disturbed unless it is unsupported by the evidence or demonstrably capricious. *Id.*

**6.** The doctrine of *nullum tempus occurrit reipublicae,* meaning "time does not run against the state," represents the principle that a statute of limitation does not apply to a commonwealth or state unless a statute specifically provides that it does. Black's Law Dictionary (7th ed.1999 at 1096). This doctrine embodies the public policy favoring protection of public rights and property from injury over the inconvenience imposed on defendants through forfeiture of the statute of limitation defense. *Department of Transportation v. J.W. Bishop & Company, Inc.*, 497 Pa. 58, 66, 439 A.2d 101, 105–06 (1981).

**7.** Pa. R.A.P. 302 specifies that issues not raised in the court below are waived and cannot be raised for the first time on appeal.

lum tempus have a common origin in the prerogative of the English Crown. *Department of Transportation v. J.W. Bishop & Company, Inc.,* 497 Pa. 58, 63, 439 A.2d 101, 103 (1981) citing 1 Blackstone, Commentaries at 247–48. However, despite their common origin, the doctrines are recognized as distinct. *Id.* at 104. In modern parlance, they may be likened to the armor of the king—the sword and the shield—the sword being nullum tempus and the shield being sovereign immunity.

■ Sovereign immunity is a vestige of the English doctrine stating "the king can do no wrong" and its adoption in our jurisprudence has been justified on the theory that it is necessary to preclude liability actions against the Commonwealth as a defendant given the risk of financial peril and an overburdened court system. *J.W. Bishop,* 497 Pa. at 64–65, 439 A.2d at 104. Nullum tempus is a vestige of the English doctrine stating "time does not run against the king" and its adoption in our jurisprudence is based on the public policy that the passage of time should not impede the Commonwealth's obligation as a plaintiff to preserve public rights and revenues and protect public property from injury and loss. *Id.* 497 Pa. at 61, 439 A.2d at 102 citing *United States v. Hoar,* 26 Fed Cases, No. 15,373 pp. 329, 330 (1821). It is well settled that municipalities, counties or other political subdivisions, though not vested with Commonwealth status, may still invoke nullum tempus provided they do so in an effort to enforce strictly public rights and obligations imposed by law. *Northampton County Area Community College v. Dow Chemical,* 389 Pa.Super. 11, 566 A.2d 591 (1989), affirmed, 528 Pa.

502, 598 A.2d 1288 (1991); *Pocono Township v. Hall,* 127 Pa.Cmwlth. 116, 561 A.2d 53 (1989). In the interest of clarity we shall focus our discussion of sovereign immunity and nullum tempus in the context of their application to the Commonwealth with the understanding that these precepts are similarly applicable to local government entities. *See Id.;* 42, 561 A.2d 53 Pa.C.S. §§ 8541, 8542.

■ The doctrines of sovereign immunity and nullum tempus are distinguishable on two grounds. First, in our Commonwealth, sovereign immunity is a creature of statute whereas nullum tempus survives as a vestige of the common law. Following abrogation of the common law doctrine of sovereign immunity by the Pennsylvania Supreme Court in *Mayle v. Department of Highways,* 479 Pa. 384, 388 A.2d 709 (1978), the General Assembly quickly reestablished sovereign immunity by enacting 1 Pa.C.S. § 2310 pursuant to Section 11 of Article 1 of the Constitution of Pennsylvania. Thereafter, the General Assembly exposed the Commonwealth to liability by enacting 42 Pa.C.S. § 8522, which created exceptions to sovereign immunity within specifically delineated tort contexts.[8] Consequently, under our current statutory scheme, although sovereign immunity survives the Commonwealth has partially waived immunity via the exceptions set forth in 42 Pa.C.S. § 8522. In addressing a challenge to the continued vitality of the common law doctrine of nullum tempus, this Court analyzed the similarities between nullum tempus and common law sovereign immunity and concluded that the Supreme Court's abrogation of common law sovereign immunity in

---

**8.** The General Assembly also enacted 42 Pa. C.S. § 8541, which is a corollary statute granting governmental immunity to local municipalities and agencies. Likewise, the General Assembly enacted 42 Pa.C.S. § 8542, which established a set of governmental immunity exceptions similar to the exceptions granted under the sovereign immunity statute.

*Mayle* required a similar outcome concerning nullum tempus. *Department of Transportation v. J.W. Bishop & Company, Inc.,* 55 Pa.Cmwlth. 377, 423 A.2d 773 (1980), reversed, 497 Pa. 58, 439 A.2d 101 (1981). However, upon finding that these two doctrines have long been recognized as distinct, our Supreme Court reversed this Court's order and confirmed the vitality of nullum tempus. *J.W. Bishop,* 497 Pa. 58, 439 A.2d 101. The Supreme Court reasoned that the inconvenience defendants may experience by forfeiting their statute of limitation defense when sued by the Commonwealth is outweighed by the public policy of vindicating public rights where the suit is brought to enforce an obligation imposed by law rather than one arising out of a voluntary contractual agreement. *Id.*

The second distinction between these two doctrines lies in the manner in which they are employed in litigation. Sovereign immunity is invoked as a shield by the sovereign defendant against suits from parties allegedly injured by its wrongful conduct or that of its agents. *Northampton County,* 566 A.2d at 594. Conversely, nullum tempus is invoked by the sovereign plaintiff and is employed as a sword to strike down the statute of limitation defense raised by the defendant whose conduct is alleged to have injured the sovereign in some manner. *Mt. Lebanon School District v. W.R. Grace & Company,* 414 Pa.Super. 455, 607 A.2d 756, 760 (1992).

Turning to the question of whether nullum tempus is subject to waiver, we note that the Township does not cite and we have not identified any controlling authority for its assertion that nullum tempus is exempt from waiver.[9] In our view, the doctrine of nullum tempus is subject to waiver when the sovereign plaintiff fails to assert its rights. We arrive at this result based on two conclusions. First, as discussed above, common law sovereign immunity no longer exists in this Commonwealth and has been replaced by a more limited statutory version that provides specified exceptions to tort immunity resulting in the Commonwealth's loss of absolute immunity from suit. See 42 Pa.C.S. §§ 8521, 8522. Further, we find the Township's analogy to the common law doctrine of sovereign immunity to be misplaced given that this Commonwealth has retained the common law doctrine of nullum tempus based on the policy objective of protecting public rights and property, which is distinctly different from the policy underpinning common law sovereign immunity, i.e., of avoiding all liability for wrongful conduct by the sovereign and its agents. Second, when the Commonwealth or local agency initiates a suit, whether seeking to enforce a public right or for some other purpose, as plaintiff it bears the burden of proof and is required under the rules of civil procedure to plead its case thoroughly to facilitate development of a record capable of adequate appellate review. *Commonwealth v. McKenna,* 476 Pa. 428, 383 A.2d 174 (1978); *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974). The sword of nullum tempus, however, is not like Excalibur and capable of prevailing regardless of the hour it is treated. We are not persuaded

---

9. In support of its position, the Township presents a 1935 Ohio case where, in dicta, the court stated that nullum tempus is an attribute of sovereignty, which can only be waived by express provision to that effect within the statute. *Board of Education of Springfield City School District v. Gibson,* 130 Ohio St.

318, 320–21, 199 N.E. 185, 186 (1935). Given that the Ohio court determined that nullum tempus was not applicable to the merits of the controversy under review, the statement pertaining to waiver of nullum tempus constitutes dicta, and therefore, the citation fails to even serve as persuasive authority.

that the moving party's status as a governmental entity should exempt it from the established rules of civil and appellate procedure. In the area of procedure, "[n]o special dispensation from the rules of evidence is accorded to the Commonwealth. Like private parties, the Commonwealth 'must meet the burden of proof, its evidence must be relevant, material, the best attainable, and (the evidence) must be presented in due order under the regular rules of procedure.'" *J.W. Bishop,* 497 Pa. at 65, 66, 439 A.2d at 104. Similarly, the requirement to timely raise all legal arguments in no way divests the Commonwealth or local agency of the opportunity to employ the doctrine of nullum tempus, it merely requires that it be raised at the appropriate stage of litigation. Had the Township timely raised nullum tempus, it likely would have succeeded in barring ComServ's statute of limitation defense.[10] However, absent controlling precedent to the contrary, we conclude that under Pa. R.A.P. 302 the Township has waived its right to invoke nullum tempus.

We next turn to ComServ's statute of limitation argument. ComServ does not dispute that it failed to comply with the terms of the Phase II and III Set Aside Agreements by neglecting to obtain the Township's approval to release the pledged funds. Rather, ComServ contends that Phase II and III Set Aside Agreements require the Township to demand payment of any remaining pledged funds if the improvements are not completed within one year of the execution date of the respective agreements. ComServ asserts that the trial court erred by not addressing its statute of limitation argument because the instant suit constitutes a stale claim given the Township's failure to initiate a cause of action within the applicable limitation period provided by statute.

The Phase II and III Set Aside Agreements essentially contain the same terms defining the obligations of the parties with the difference occurring in the amount of pledged funds and completion schedule for the two development phases. In the event that A & M failed to perform its obligations, paragraph five of both agreements established the Township's duty as follows:

> If, after the lapse of one (1) year's time from the date hereof, the Improvements contemplated by this Agreement are not constructed and installed and approved by the Township, then in that event the Township will demand and receive payment of any balance remaining in the Pledge Funds and proceed to use the funds received specifically to cause the completion of the Improvements to the extent permitted by the funds so made available.

Phase II Set Aside Agreement, R.R. at 345a–46a; Phase III Set Aside Agreement, R.R. at 363a.

The undisputed facts show that A & M, ComServ and the Township executed the

---

10. We disagree with ComServ's contention that the Township could not assert nullum tempus because it was enforcing purely contractual rights. While the Township was seeking to enforce its rights under contract, the Township entered into the Development and Set Aside Agreements as a means of ensuring compliance with provisions of its land development ordinance governing the transfer of roads in private residential developments to the Township's jurisdiction. In our view, this circumstance satisfies the requirement that in order to invoke nullum tempus, municipalities or other political subdivisions must be seeking to enforce strictly public rights and obligations imposed by law. *See Northampton County College v. Dow Chemical,* 389 Pa.Super. 11, 566 A.2d 591 (1989), affirmed, 528 Pa. 502, 598 A.2d 1288 (1991); *Pocono Township v. Hall,* 127 Pa.Cmwlth. 116, 561 A.2d 53 (1989).

Phase II Set Aside Agreement on February 22, 1990 and these same parties executed the Phase III Set Aside Agreement on an unspecified date during the month of August, 1991.[11] The Township, as the author of both agreements, used the affirmative language "will demand" payment in the event of A & M's default rather than the optional language "may demand" payment. Given A & M's failure to perform and the affirmative requirement imposed on the Township to demand the pledged funds from ComServ after the lapse of one year from execution, we conclude that the Township's causes of action concerning the Phase II and III Set Aside Agreements accrued on February 22, 1991 and no later than August 31, 1992, respectively.[12]

The Township commenced the instant action on September 17, 1996, which is more than five years beyond the accrual of its Phase II Set Aside Agreement cause of action and more than four years beyond the accrual of its Phase III Set Aside Agreement cause of action. Accordingly, we must determine which statute of limitation governs. ComServ contends that the set aside agreements constitute performance bonds making these agreements subject to the one-year limitation period provided at 42 Pa.C.S. § 5523. Alternatively, ComServ asserts that should this Court conclude that the set aside agreements do not constitute performance bonds, then the four-year limitation period applicable to written contracts set forth at 42 Pa.C.S. § 5525(8) governs. ComServ argues that the Township's cause of action is untimely under either of these statutory provisions because the Township filed suit beyond four years of the date the cause of action arose for both set aside agreements.

 The Township responds that both the Phase II and III Set Aside Agreements were executed under seal making them subject to the twenty (20) year statute of limitation set forth at 42 Pa.C.S. § 5529(b)(1).[13] The Township contends that the record clearly demonstrates that these agreements were executed under seal, and therefore, it timely preserved its cause of action on September 17, 1996.

 We begin with ComServ's assertion that the Phase II and III Set Aside

11. The Phase III Set Aside Agreement contained in the record is not dated. However, the parties mutually assert that this agreement was executed sometime during the month of August 1991.

12. We note that the Phase II Development Agreement lists a projected date of "approximately December 31, 1990" for completion of all Phase II work. The Phase III Development Agreement lists a projected date of "approximately January 31, 1992" for completion of all Phase III work. Even allowing a several month margin of error to accommodate the modifier "approximately," the completion dates in both development agreements fall well within the dates on which the Phase II and III Set Aside Agreements specified that the Township was required to demand release of the pledged funds if A & M defaulted.

13. Historically, a contract signed under seal required no consideration to be enforceable. For centuries prior to the development of the doctrine of consideration, and long before contracts were enforced, contracts under seal were enforced. Traditionally, a seal was applied to a document through an impression in wax or similar impressionable substance. In current practice, a particular sign, e.g., L.S., or the word "seal," is made in lieu of a pressed seal to attest the execution of the document. BLACKS LAW DICTIONARY 295, 1210 (5th ed.1979). It is well settled that, although a vestige of the past, a contract under seal operates to lengthen the statute of limitation and an instrument containing the word "seal" or its equivalent is deemed a sealed instrument if the maker adopts the seal through signature. *See Swaney v. Georges Township Road District*, 309 Pa. 385, 164 A. 336 (1932); *Collins v. Tracy Grill & Bar Corp.*, 144 Pa.Super. 440, 19 A.2d 617 (1941); *Graybill v. Juniata County School District*, 21 Pa. Cmwlth. 630, 347 A.2d 524 (1975).

Agreements are performance bonds, making the agreements subject to the one-year statute of limitation provided at 42 Pa.C.S. § 5523. Section 5523(2) and (3) apply a one-year limitation period to "an action upon a bond given as security by a party in any matter ..." and "an action upon any payment or performance bond," respectively. 42 Pa.C.S. § 5523. The Township counters that paragraph 2(c) of the Phase II and III Development Agreements specified that A & M could ensure proper performance by either posting a performance bond with a surety acceptable to the Township or delivering to the Township a set aside agreement with an approved financial institution. The Township argues that A & M chose to ensure its performance by executing set aside agreements which operate under different terms than performance bonds, and therefore, do not fall within the one-year limitation provision provided at 42 Pa.C.S. § 5523. We agree.

 Both performance bonds and set aside agreements are designed to protect the party issuing a contract by ensuring faithful contract performance. However, they accomplish this common end through different means. A performance bond is a certificate evidencing a debt for one hundred percent of the contract amount, conditioned upon performance of the contract in accordance with its plans, specifications and conditions. *Downingtown Area School District v. International Fidelity Ins. Co.*, 671 A.2d 782, 786 (Pa. Cmwlth.1996). The Phase II and III Set Aside Agreements executed by the parties represent a contractual arrangement whereby the Township agreed to permit the development proposed by A & M in exchange for the right to approve incremental portions of the work before ComServ could release the commensurate portion of the loan proceeds to A & M.

Through this right to control the incremental release of loan proceeds to A & M, the Township gained a measure of assurance by mitigating its risk of non-compliant performance. In our view, these set aside agreements are substantively different than a certificate evidencing a debt, i.e., a performance bond, offered for the purpose of providing compensation in the event of failed performance. Since the limitation period set forth at 42 Pa.C.S. § 5523 only pertains to actions upon performance bonds, we conclude that the one-year limitation period does not govern the instant matter. If the General Assembly had intended to limit actions concerning all means of ensuring performance, e.g., bonds, mortgages, set aside agreements, etc., to a one-year limitation period it easily could have done so. See Section 1921 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921. It is not for the courts to add, by interpretation, to a statute, a requirement which the General Assembly did not see fit to include. *Pennsylvania Financial Responsibility Assigned Claims Plan v. English*, 541 Pa. 424, 664 A.2d 84 (1995).

 We next turn to the question of whether the Phase II and III Set Aside Agreements are contracts under seal, in which case this action is barred under the four-year limitation period, or whether the agreements are instruments under seal, in which case this action is timely under the 20–year limitation period. The Township argues that the mere fact that the set aside agreements were executed under seal brings them within the purview of the 20–year limitation period provided at 42 Pa.C.S. § 5529(b)(1). We disagree. The limitation provisions relevant to resolution of this dispute are as follows:

**Section 5525. Four Year Limitation.** The following actions and proceedings must be commenced within four years:

...

(7) An action upon a negotiable or non-negotiable bond, note or other similar instrument in writing. Where such an instrument is payable upon demand, the time within which an action on it must be commenced shall be computed from the later of either demand or any payment of principal of or interest on the instrument.

(8) An action upon a contract, obligation or liability founded upon a writing not specified in paragraph (7), under seal or otherwise, except an action subject to another limitation specified in this subchapter.

. . .

**Section 5529. Twenty Year Limitation.**

. . .

(b) *Instruments under seal.*

(1) Notwithstanding section 5525(7) (relating to four year limitation), an action upon an instrument in writing under seal must be commenced within 20 years.[14]

42 Pa.C.S. §§ 5525(7), (8) and 5529(b)(1).

■■■ Based on a collective reading of these statutory provisions we conclude the following: (1) the four-year limitation period set forth in § 5525(7) applies to negotiable and nonnegotiable bonds, notes or other similar instruments in writing that *are not* under seal; (2) the 20–year limitation period set forth in § 5529(b)(1) applies to negotiable and nonnegotiable bonds, notes or other similar instruments in writing that *are* under seal; and (3) the four-year limitation period set forth in § 5525(8) applies to all contracts in writing that do not constitute negotiable or nonnegotiable bonds, notes or other similar instruments, *irrespective of whether or not the contract is under seal.* Having earlier concluded

that the Phase II and III Set Aside Agreements are not performance bonds but rather constitute contracts between ComServ and the Township, we conclude that the four-year limitation period set forth in § 5525(8) applies making the instant action untimely. 42 Pa.C.S. § 5525(8).

Accordingly, we. hold that the trial court erred when it failed to dismiss the Township's action as time barred pursuant to 42 Pa.C.S. § 5525(8). Having determined that the instant action is barred under the statute of limitation, we need not reach ComServ's remaining appeal arguments or the Township's cross-appeal arguments. The trial court's order dated June 10, 1998 is hereby reversed.

### ORDER

AND NOW, this 19th day of March, 2001, the order of the Court of Common Pleas of Allegheny County dated June 10, 1998, which entered judgement against ComServ, Inc., is hereby reversed.

■■■■■■■

---

**14.** The General Assembly revised subsection 42 Pa.C.S. § 5529(b)(2) in 1998 by extending the expiration for this provision by twenty years (June 27, 2018). The substantive provisions of subsection 42 Pa.C.S. § 5529(b)(1) were not modified.